Stanley E. Woodward, Jr.
ASSOCIATE ATTORNEY GENERAL

Andrew J. Block
Senior Counsel, Office of the Associate Attorney General
UNITED STATES DEPARTMENT OF JUSTICE
950 Pennsylvania Ave. NW
Washington, D.C. 20530
Tel: (202) 514-0136
andrew.block@usdoj.gov

Attorneys for Defendants

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALLISON M. GILL, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF JUSTICE, et al., <br><br> Defendants. | Case No.: 26-cv-3283-CAB-DDL <br><br> **DEFENDANTS' MOTION TO DISMISS** <br><br> Date: FRIDAY, SEPTEMBER 4, 2026 <br><br> Time: PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT <br><br> Judge: THE HONORABLE CATHY ANN BENCIVENGO |

# **TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................................................i

TABLE OF AUTHORITIES .......................................................................................ii

MOTION......................................................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES..............................................1

INTRODUCTION .......................................................................................................1

BACKGROUND .........................................................................................................4

LEGAL STANDARD..................................................................................................9

ARGUMENT ............................................................................................................10

    I.    Plaintiff's Claim is not Justiciable ......................................................10

        A.    Plaintiff's Claim Is Not Ripe For Adjudication........................10

        B.    This Case Is Moot...................................................................13

        C.    Plaintiff Lacks Standing..........................................................14

    II.    Plaintiff Fails to Plead Any Cognizable Cause of Action ..................17

CONCLUSION..........................................................................................................19

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Abbott Lab'ys v. Gardner*,
    387 U.S. 136 (1967)............................................................................................11, 12

*Allen v. Wright*,
    468 U.S. 737 (1984)......................................................................................................14

*Already, LLC v. Nike Inc.*,
    568 U.S. 85 (2013)........................................................................................................13

*Amalgamated Transit Union Int'l v. U.S. Dep't of Lab.*,
    No. 23-15503, 2024 WL 3565264 (9th Cir. July 29, 2024) ......................................10

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..................................................................................................9, 10

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)..................................................................................................9. 10

*Bennett v. Spear*,
    520 U.S. 154 (1997)..................................................................................................17, 18

*Cahill v. Liberty Mut. Ins. Co.*,
    80 F.3d 336 (9th Cir. 1996) ..........................................................................................9

*Campanelli v. Bockrath*,
    100 F.3d 1476 (9th Cir. 1996) ......................................................................................9

*Citizens for Responsibility and Ethics in Washington v. Dep't of Justice*,
    No. 1:26-cv-1789, 2026 WL 1802997 (D.D.C. June 23, 2026) ................................8

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013)......................................................................................................15

*Colwell v. Dep't of Health & Hum. Servs.*,
    558 F.3d 1112 (9th Cir. 2009) ....................................................................................10

*Ctr. for Biological Diversity v. Haaland*,
    58 F. 4th 412 (9th Cir. 2023) ................................................................................17, 18

*FDA v. All. for Hippocratic Med.*,
    602 U.S. 367 (2024)..........................................................................................10, 14, 15

*Floyd v. Dep't of Justice*,
  No. 1:26-cv-1399 (E.D. Va.) ...............................................................8

*Garcia v. Vilsack*,
  No. 00-2445 (D.D.C.) ...........................................................................8

*Griffin v. IRS*,
  No. 1:22-cv-24023 (S.D. Fla.) ...........................................................4, 5

*Hawkins v. Kellogg Co.*,
  224 F. Supp. 3d 1002 (S.D. Cal. 2016) .........................................9, 10, 19

*Hein v. Freedom From Religion Found., Inc.*,
  551 U.S. 587 (2007)...........................................................................3, 14, 16

*Hollingsworth v. Perry*,
  570 U.S. 693 (2013)..................................................................................1

*Ileto v. Glock Inc.*,
  349 F.3d 1191 (9th Cir. 2003) .............................................................9, 17

*In re Honda Idle Stop Litig.*,
  694 F. Supp. 3d 1293 (C.D. Cal. 2023)...................................................9

*Keepseagle v. Vilsack*,
  102 F. Supp. 3d 306 (D.D.C. 2015)........................................................7

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
  511 U.S. 375 (1994)................................................................................10

*Love v. Vilsack*,
  No. 00-02502 (D.D.C.) ..........................................................................8

*Lujan v. Nat'l Wildlife Fed'n*,
  497 U.S. 871 (1990)................................................................................17

*Margolin v. Nat'l Ass'n of Immigr.n Judges*,
  146 S.Ct. 1285 (2026)...............................................................................1

*MedImmune, Inc. v. Genentech, Inc.*,
  549 U.S. 118 (2007)...............................................................................11

*National Park Hospitality Ass'n v. Dep't of Interior*,
  538 U.S. 803 (2003)..........................................................................10, 12

-iii-

*Nat'l Treasury Emps. Union v. United States*,
  101 F.3d 1423 (D.C. Cir. 1996)................................................................12

*New York State Rifle & Pistol Ass'n, Inc. v. City of New York*,
  590 U.S. 336 (2020).......................................................................................1

*Norton v. S. Utah Wilderness All.*,
  542 U.S. 55 (2004).......................................................................................17

*Oregon Nat. Desert Ass'n v. U.S. Forest Serv.*,
  465 F.3d 977 (9th Cir. 2006) ...............................................................17, 18

*People of State of Cal. v. San Pablo & T.R. Co.*,
  149 U.S. 308 (1893)................................................................................13, 14

*Railway Mail Ass'n v. Corsi*,
  326 U.S. 88 (1945)................................................................................10, 11

*Renteria v. United States*,
  452 F. Supp. 2d 910 (D. Ariz. 2006) ...........................................................9

*Safe Air for Everyone v. Meyer*,
  373 F.3d 1035 (9th Cir. 2004) .....................................................................9

*Savage v. Glendale Union High Sch.*,
  343 F.3d 1036 (9th Cir. 2003) .....................................................................9

*Schlesinger v. Reservists Comm. to Stop the War*,
  418 U.S. 208 (1974)......................................................................................14

*Steel Co. v. Citizens for a Better Environment*,
  523 U.S. 83 (1998)........................................................................................16

*Texas v. United States*,
  523 U.S. 296 (1998)................................................................................11, 12

*Thomas v. Anchorage Equal Rts. Comm'n*,
  220 F.3d 1134 (9th Cir. 2000) .........................................................10, 11, 14

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021).................................................................................3, 15

*Trump v. IRS*,
  No. 1:26-cv-20609 (S.D. Fla.).....................................................................5

*Trustgard Ins. Co. v. Collins*,
    942 F.3d 195 (4th Cir. 2019) ..................................................................................11

*United States v. Littlejohn*,
    1:23-cr-343 (D.D.C. Jan. 31, 2024) ..........................................................................4

*United States v. Littlejohn*,
    2026 WL 2065951 (D.C. Cir., July 17, 2026) ..........................................................4

*U.S. Army Corps of Eng'rs v. Hawkes Co., Inc.*,
    578 U.S. 590 (2016) ................................................................................................17

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*,
    454 U.S. 464 (1982).................................................................................................14

*Varol v. Radel*,
    420 F. Supp. 3d 1089 (S.D. Cal. 2019) ...................................................................10

*Whitman v. Am. Trucking Ass'n*,
    531 U.S. 457 (2001).................................................................................................18

*Whitmore v. Arkansas*,
    495 U.S. 149 (1990).................................................................................................11

**Constitutions**

U.S. Const. Art. III...................................................................................................10

**Statutes**

5 U.S.C. § 552a(e)(10)...........................................................................................4, 5

5 U.S.C. § 552a(g)(1)..................................................................................................4

5 U.S.C. § 704........................................................................................................3, 17

15 U.S.C. § 1522.........................................................................................................6

26 U.S.C. § 6103.........................................................................................................5

26 U.S.C. § 7213(a)(1)................................................................................................4

26 U.S.C. § 7431.........................................................................................................5

26 U.S.C. § 7431(a)(1)................................................................................................4

43 U.S.C. § 1473 ..........................................................................................................6

43 U.S.C. § 1737(c) ....................................................................................................6

**Rules**

Fed. R. Evid. 201(b)(2) ...............................................................................................2

**Other Authorities**

Wright & Miller, Fed. Practice and Procedure § 3532.1 (3d ed. April 2026) .............13

3:26-cv-3283-CAB-DDL

**MOTION**

Defendants move to dismiss Plaintiff's complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). This motion is based on the following Memorandum of Points and Authorities, as well as all pleadings and filings in this action, and upon any such other matters or argument that the Court may permit.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

Defendants move this Court to dismiss this case pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) because Plaintiff cannot establish subject-matter jurisdiction and, in any event, fails to state a claim upon which relief can be granted.

This dispute concerns an Anti-Weaponization Fund that has not been set up and is now not going forward. As a result, Plaintiff's claim is not justiciable and ought to be dismissed. Federal courts may resolve "active political debate[s] . . . only if necessary to do so in the course of deciding an actual 'case' or 'controversy'" as those words are "used in the Constitution." *Hollingsworth v. Perry*, 570 U.S. 693, 697, 700 (2013). Article III of the Constitution is thus "an essential limit" on judicial power. *Id.* at 700. "It ensures that [courts] act as *judges*, and do not engage in policymaking properly left to elected representatives." *Id.* at 700. That remains true even when there is a high-profile "controversy" in the *non*-Article III sense. *Id.* After all, "[f]ederal courts are not roving commissions licensed to sally forth each day looking for wrongs to right." *Margolin v. Nat'l Ass'n of Immigr.n Judges*, 146 S.Ct. 1285, 1288 (2026) (internal quotation marks and citations omitted). Opining on abstract issues is even more inappropriate where challengers have already received "the precise relief that [they] requested," rendering a case "moot." *New York State Rifle & Pistol Ass'n, Inc. v. City of New York*, 590 U.S. 336, 338–39 (2020). Those principles control here. The United States thus moves to dismiss the complaint on justiciability grounds pursuant to Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6).

3:26-cv-3283-CAB-DDL

On May 18, 2026, the Department of Justice announced through a Settlement Agreement the establishment of "The Anti-Weaponization Fund," ("Fund") which would provide a systematic process to hear and redress certain claims alleging use of the levers of government power to target individuals, groups, and entities for improper and unlawful reasons. ECF No. 1 at ¶ 16 (attached as Exhibit A). The Acting Attorney General issued a corresponding order the same day. *Id.* at ¶ 29 (attached as Exhibit B). The Settlement Agreement and order garnered significant attention and provoked widespread debate about the weaponization of government, whether and how any claims process should function, and past settlements reached by other administrations. But when Plaintiff filed this case—and indeed to this date—no money has been transferred to the Fund, let alone any potential claimant. No mechanisms have been put in place to formally submit, receive, process, grant, or deny claims. Indeed, none of the five contemplated "Members" who would establish and administer such procedures for the Fund were ever appointed.

After Plaintiff filed this case, the political process continued to play out. On June 2, 2026, the Acting Attorney General told Congress that although "the reasons for the Fund remain important," the Fund is "not going forward, period." House Appropriations Committee, Oversight Hearing – Department of Justice, at 40:30–42:50 *available at* https://www.youtube.com/watch?v=rt_bIvnvq3o ("House Hearing"). [1]

Then, on July 15, 2026, Acting Attorney General Blanche testified, under oath, at his Senate Confirmation hearing that the Fund "is a moot issue, meaning there is no weaponization fund. The weaponization fund is dead, it's not moving forward" Senate Judiciary Committee, Nomination Hearing of the Honorable Todd Blanche to be Attorney General of the United States ("Nomination Hearing"), at 1:26:42–:49. When

---

[1] Because the Acting Attorney General's statements were recorded, this Court can take judicial notice of them. *See* Fed. R. Evid. 201(b)(2) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").

pressed further, he said, "The settlement Fund is just not moving forward. There's no modification. It never started. No money went from the Treasury to any other account. There's no commissioners. It's not moving forward." *Id.* at 1:27:12–:22.

In addition to the Plaintiff's claims being not justiciable, Plaintiff lacks standing to bring any claim under the Administrative Procedure Act ("APA"). Plaintiff cannot show any "injury in fact that is concrete, particularized, and actual or imminent," let alone an injury that "would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). Because courts are not "general complaint bureaus," a "federal taxpayer" does not have standing just because the taxpayer thinks that a "federal expenditure" is unlawful. *Hein v. Freedom From Religion Found., Inc.*, 551 U.S. 587, 593 (2007). Yet that is the exact type of claim the Plaintiff offers here: a generalized grievance about a once-planned government action with which she has a policy disagreement.

Plaintiff alleges that she has been injured by having been deprived of notice and comment rulemaking for a process that was never initiated, is now not moving forward, and, would not have been subject to notice and comment rulemaking anyway. Additionally, her argument that she needed notice and comment procedures to protect her interests to be able to apply to the Fund simply misreads the plain text of the Settlement Agreement. Even if this were a fair reading of the terms of the Settlement (it is not), it is the definition of a future speculative harm, making the case unripe. Plaintiff bears the burden of establishing jurisdiction and she cannot do that here.

Because mootness, standing, and ripeness are all fatal to Plaintiff's complaint, there is no need to reach the merits of the APA count. But to be clear, Plaintiff has also failed to plead a claim for which relief can be granted because there is no "final agency action" for this Court to review. 5 U.S.C. § 704. The Court should dismiss the Complaint with prejudice.

-3-

3:26-cv-3283-CAB-DDL

**BACKGROUND**

In anticipation of the 2020 election, Charles Littlejohn obtained a job as an IRS contractor with the goal of leaking President Donald J. Trump's tax data. Littlejohn leaked President Trump's tax returns (and the tax data of his sons Donald J. Trump, Jr. and Eric Trump, as well as the Trump Organization, LLC) to the New York Times in 2019. The New York Times began to publish stories about the returns in September 2020. Separately, Littlejohn stole the tax data of thousands of wealthy individuals and shared that information with another media company.

Under 26 U.S.C. § 7213(a)(1), the unauthorized disclosure of tax return information is a felony. Littlejohn was eventually caught, convicted, and sentenced to the maximum five years in prison. *See* Judgment at 35, *United States v. Littlejohn*, 1:23-cr-343 (D.D.C.) (Jan. 31, 2024) (sentencing Defendant to "Sixty (60) Months" of incarceration), *aff'd* Case No. 24-3019, 2026 WL 2065951 (D.C. Cir., July 17, 2026); *see also* U.S. Department of Justice, *Former IRS Contractor Sentenced for Disclosing Tax Return Information to News Organizations* (Jan. 29, 2024) *available at* https://www.justice.gov/archives/opa/pr/former-irs-contractor-sentenced-disclosing-tax-return-information-news-organizations.

The federal tax code also provides a right of action for taxpayers whose returns have been leaked to bring a civil action for damages against the United States. 26 U.S.C. § 7431(a)(1). And under the federal Privacy Act, when an agency fails to "establish appropriate . . . safeguards to insure the security and confidentiality of records and to protect against any anticipated threats or hazards to their security or integrity which could result in substantial harm, embarrassment, inconvenience, or unfairness to any individual on whom information is maintained," an injured individual "may bring a civil action against the agency." 5 U.S.C. § 552a(e)(10), (g)(1).

In 2022, another victim of Littlejohn's leak sued the United States in the Southern District of Florida and invoked these provisions. *See Griffin v. IRS*, 1:22-cv-24023 (S.D. Fla.). The United States unsuccessfully moved to dismiss the tax code claim on the

-4-

ground that Littlejohn was not technically an employee of the United States (despite his contractor label). *See Griffin*, ECF No. 108 at 4–7. The court contemplated summary judgment proceedings, and potentially a trial, on that question. *See id.* at 10. Although the court held that the victim did not adequately allege damages under the Privacy Act, the court appeared to assume that the Privacy Act would otherwise apply. *See id.* at 9–10. Ultimately, the victim settled with the United States for a formal apology.[2]

On January 29, 2026, President Trump, Donald J. Trump, Jr., Eric Trump, and the Trump Organization, LLC filed a complaint against the Internal Revenue Service in the U.S. District Court for the Southern District of Florida. *See Trump v. IRS*, 1:26-cv-20609-KMW, ECF No. 1 (Jan. 29, 2026). In the Florida action, the Trump plaintiffs asserted claims under 26 U.S.C. § 6103, 26 U.S.C. § 7431, and 5 U.S.C. § 552a(e)(10). *See id.* In the Settlement Agreement counsel for Plaintiffs indicated that they intended to amend their complaint to add a putative class claim. Ex. A at 1. President Trump had also submitted Federal Tort Claims Act ("FTCA") administrative claims for relief alleging an unlawful raid on his Mar-a-Lago home in Palm Beach, Florida, as well as unlawful targeting in relation to the infamous Russia-collusion hoax. *See id.*

Because President Trump is the Chief Executive, his lawsuits against the United States presented unique challenges. At the same time, Presidents do not forfeit their legal rights. Ultimately, the federal defendants agreed to resolve the litigation and pre-litigation FTCA administrative claims without the United States having to give the plaintiffs "monetary payment or damages of any kind," as memorialized by a Settlement Agreement dated May 18, 2026. *See* Ex. A Instead, the plaintiffs would "receive a formal apology." *Id.* at 1. The plaintiffs waived all claims that could have been asserted in connection with the litigation and administrative claims process. *Id.* at 2. And the United States agreed to establish "a systematic process to hear and redress claims of

---

[2] *The IRS Apologizes to Ken Griffin*, WALL STREET JOURNAL (June 26, 2024), *available at* https://www.wsj.com/opinion/the-irs-apologizes-to-ken-griffin-citadel-taxdata-charles-littlejohn-propublica-d18b 1917.

others who, like Plaintiffs, state that they incurred harm from similar Lawfare and Weaponization" through "The Anti-Weaponization Fund." *Id.*

The Settlement Agreement states that the Attorney General, within 30 days of the settlement, would enter an order to "establish funding and any other relevant requirements, rules, conditions, terms, and waivers" and "issue an order appointing [five] Members, including the Chair." *Id.* "One of the Members shall be chosen in consultation with congressional leadership," and all members would continue in their roles until the Fund concludes, "unless they resign or are removed by the President." *Id.* The Members comprising the Fund would "have the power to determine its own procedures for submitting, receiving, processing, and granting or denying claims." *Id.* And the "Fund may make those procedures public in whole or in part, in its discretion," while "taking reasonable steps to protect private personal and financial information submitted to [the Fund] under th[e] Settlement Agreement." *Id.* at 2, 4.

The Settlement Agreement further states that the "Fund shall have the power to issue formal apologies, issue monetary relief owed to claimants as a result of their legal rights, grant claims in whole or in part, deny claims in whole or in part, defer review of claims, and receive and request evidence or other support for claims, including requesting information from, or consulting with, federal agencies." *Id.* at 2–3. And "[o]n a quarterly basis, or otherwise as directed by the Attorney General, The Anti-Weaponization Fund shall provide to the Attorney General a confidential written report that includes the name and address of each claimant who has received any relief and if so, the nature of such relief." *Id.* at 3. The Fund would "cease processing claims no later than December 1, 2028," and the Fund would "transfer [any remaining] balance . . . to the Department of Commerce, Interior, or another appropriate federal government account as designated by the President." *Id.* (citing 43 U.S.C. §§ 1473, 1737(c); 15 U.S.C. § 1522).

The Settlement Agreement states that "To be eligible for relief, a claimant must assert at least one legal claim stating that the claimant was a victim of Lawfare and/or

Weaponization." Ex. A at 3. In evaluating claims, the Fund would "consider the totality of the circumstances," including

> a. The strength of the claim and supporting evidence.
> b. The claimant's actions.
> c. The claimant's actual damages . . . .
> d. Reasonable attorneys' fees paid by the claimant as a result of the Lawfare and Weaponization.
> e. Any time the claimant spent in prison . . . or custody as a result of the Lawfare and Weaponization.
> f. Whether and to what extent the claimant has already obtained any form of relief . . . from any source.
> g. Other factors The Anti-Weaponization Fund deems just and appropriate.

*Id.* at 3–4.

The Settlement Agreement contains a rule of construction stating that "Nothing contained in this Settlement Agreement shall impose on Defendants . . . any duty, obligation, or requirement, the performance of which would be inconsistent with federal statutes." *Id.* at 4–5.

On May 18, 2026, the Attorney General issued an order pursuant to the Settlement Agreement. Ex. B. The order stated that the United States would "provide the U.S. Department of the Treasury with all necessary forms and documentation to direct a payment of $1,776,000,000 to an account for the sole use by the Anti-Weaponization Fund" "[w]ithin 60 days." *Id.* at 1. The order also clarified that Fund Members would serve on a volunteer basis. *Id.* And it noted that previous cases have been settled on similar terms. *See id.* at 1–2 (citing, e.g., *Keepseagle v. Vilsack*, 102 F. Supp. 3d 306, 309 (D.D.C. 2015)).[3]

---

[3] The *Keepseagle* settlement "created a Compensation Fund . . . of $ 680,000,000" that would be paid through a "Non-Judicial Claims Process." 102 F. Supp. 3d at 309. Unlike the Anti-Weaponization Fund, which would revert any balance to the federal government, the *Keepseagle* settlement provided for "leftover" money to be distributed to persons and entities that the plaintiffs' class counsel designated as having benefited Native American farmers and ranchers. *See id.* Such persons and entities included "non-profit organizations." *Id.* (alteration omitted). When the non-judicial claims process

Following this announcement, however, the political process continued to unfold. In the ensuing weeks, the Department, through its official pages, in its court filings, in its representations to courts, and through the testimony of the Acting Attorney General before a Committee of the House of Representatives stated that "we are not moving forward with the fund, period." House Hearing, at 40:30–42:50. Relying on these statements, a federal court in the District of Columbia denied a motion for a Temporary Restraining Order and Preliminary Injunction in a case very similar to the instant action. *Citizens for Responsibility and Ethics in Washington v. Dep't of Justice*, Case No. 1:26-cv-1789, 2026 WL 1802997 (D.D.C.) (Leon, J.) (Minute Entry of June 10, 2026, denying motion for Temporary Restraining Order and ECF No.s 20, 21 Order and Memorandum Opinion denying a motion for Preliminary Injunction for lack of subject matter jurisdiction). Meanwhile a court in the Eastern District of Virginia entered a Preliminary Injunction enjoining Defendants, *inter alia*, "from taking any action to create or operate the Anti-Weaponization Fund." *Floyd v. Dep't of Justice*, 1:26-cv-1399, ECF No. 85 (E.D. Va., Jun. 12, 2026).

Thereafter, the Acting Attorney General testified, under oath, to the Senate Judiciary Committee, in his confirmation hearing to be Attorney General of the United States of America that "there is no weaponization fund. The weaponization fund is dead,

---

concluded, "approximately $380,000,000 remained leftover," leading to further settlement modifications and litigation about what persons and entities would receive the remaining funds despite not having submitted claims. *Id.* at 310. The Obama administration also administratively created a voluntary claims process for Hispanic and women farmers, without requiring the filing of a prior lawsuit, by making over $1.3 billion available from the Judgment Fund (plus up to $160 million in debt relief). Department of Justice, *Department of Justice and USDA Announce Process to Resolve Discrimination Claims of Hispanic and Women Farmers* (Feb. 25, 2011), *available at* https://www.justice.gov/archives/opa/pr/department-justice-and-usda-announce-process-resolve-discrimination-claims-hispanic-and-women; *see also Garcia v. Vilsack*, No. 00-2445 (D.D.C.); *Love v. Vilsack*, No. 00-02502 (D.D.C.).

it's not moving forward" and "I'm under oath today, and I've said it's dead repeatedly." Nomination Hearing at 1:26:42–:49; 2:30:44–:53.

## LEGAL STANDARD

Defendants move to dismiss this action under both Rule 12(b)(1) and 12(b)(6), which have related, but distinct standards.

"In the context of a 12(b)(1) motion, the plaintiff bears the burden of establishing Article III standing to assert the claims." *In re Honda Idle Stop Litig.*, 694 F. Supp. 3d 1293, 1299 (C.D. Cal. 2023). "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.* "By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.* "In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id.* (citing *Savage v. Glendale Union High Sch.,* 343 F.3d 1036, 1039 n. 2 (9th Cir. 2003)).

Under Rule 12(b)(6), "a party may move to dismiss a complaint for failure to state a claim for relief." *Hawkins v. Kellogg Co.*, 224 F. Supp. 3d 1002, 1007 (S.D. Cal. 2016). "In these instances, review is limited to the contents of the complaint." *Renteria v. United States*, 452 F. Supp. 2d 910, 919 (D. Ariz. 2006) (citing *Campanelli v. Bockrath,* 100 F.3d 1476, 1479 (9th Cir. 1996)). The standard on a motion to dismiss is that "a court must assume the truth of all factual allegations and construe the factual allegations in the light most favorable to the nonmoving party." *Hawkins*, 224 F. Supp. 3d at 1007 (citing *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996)). And while Rule 12(b)(6) "tests the legal sufficiency of the claims asserted in the complaint," courts need not "assume the truth of legal conclusions cast in the form of factual allegations." *Ileto v. Glock Inc.*, 349 F.3d 1191, 1199–1200 (9th Cir. 2003). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual

-9-

enhancement." *Hawkins*, 224 F. Supp. 3d at 1007 (cleaned up) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

## ARGUMENT

## I. PLAINTIFF'S CLAIM IS NOT JUSTICIABLE

Under Article III, federal courts can exercise jurisdiction over only "Cases" and "Controversies." U.S. Const. Art. III, § 2, cl. 1. "The case or controversy requirement limits the role of the Federal Judiciary in our system of separated powers." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 378 (2024). "Plaintiff, as the party seeking to invoke jurisdiction, has the burden of establishing that jurisdiction exists." *Varol v. Radel*, 420 F. Supp. 3d 1089, 1094 (S.D. Cal. 2019) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

### A.    Plaintiff's Claim Is Not Ripe For Adjudication

One part of that "justiciability doctrine"—which on its own and independently resolves this matter—is "ripeness." *National Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 807–08 (2003) ("*Nat'l Park*"). The ripeness doctrine is not a mere speed bump; it is a "justiciability doctrine designed 'to prevent the courts … from entangling themselves in abstract disagreements over administrative policies … until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Amalgamated Transit Union Int'l v. U.S. Dep't of Lab.*, No. 23-15503, 2024 WL 3565264, at *1 (9th Cir. July 29, 2024) (quoting *Nat'l Park*, 538 U.S. at 807–08). As the Supreme Court and Ninth Circuit have explained, the ripeness doctrine is "drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Colwell v. Dep't of Health & Hum. Servs.*, 558 F.3d 1112, 1123 (9th Cir. 2009) (quoting *Nat'l Park*, 538 U.S. at 808).

In addressing the Article III strand of the ripeness doctrine, "the Constitution mandates that prior to our exercise of jurisdiction there exist a constitutional 'case or controversy,' that the issues presented are 'definite and concrete, not hypothetical or abstract.'" *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1139 (9th Cir.

-10-

2000) (quoting *Railway Mail Ass'n v. Corsi,* 326 U.S. 88, 93 (1945)). In this respect, the overlap with the standing doctrine is significant. "In assuring that this jurisdictional prerequisite is satisfied, we consider whether the plaintiffs face a realistic danger of sustaining a direct injury … or whether the alleged injury is too 'imaginary' or 'speculative' to support jurisdiction. We need not delve into the nuances of the distinction between the injury in fact prong of standing and the constitutional component of ripeness: in this case, the analysis is the same." *Id.* "In evaluating the prudential aspects of ripeness," courts consider two factors: "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id.* at 1141 (quoting *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 149 (1967)). Ultimately, ripeness is lacking when a claim or injury depends on "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998).

Here, there has been (and will be) no concrete action. Any purported assumption about how the Fund might have operated is precisely the type of speculative harm courts routinely find are unripe. And for good reason. "These constitutional doctrines ensure that we do not exceed the limits of Article III judicial power, and so guard against our rendering of an opinion 'advising what the law would be upon a hypothetical state of facts.'" *Trustgard Ins. Co. v. Collins*, 942 F.3d 195, 200 (4th Cir. 2019) (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126 (2007)). "Allegations of possible future injury do not satisfy the requirements of Art. III." *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990).

Even taking the complaint in the light most favorable to the Plaintiff, it fails to plead a ripe case. Indeed, Plaintiff's theory is that by failing to undertake notice and comment rulemaking, the Fund would have operated in a way that deprived her of her "due process interests" and potentially paid what she terms "constitutionally ineligible claimants." ECF No. 1 at ¶¶ 41, 43. This formulation suffers from several fatal flaws, including invoking taxpayer standing and assuming the existence of a legally protected

interest, both of which are discussed further, *infra*. Relevant to the ripeness analysis, though, is that the complaint is premised on the assumption that certain claims would be compensated while other claims would be denied. But without any Members having been appointed, any criteria adopted, and any claims actually submitted or reviewed, such allegations are the definition of a "contingent future event that may not occur as anticipated, or indeed may not occur at all." *Texas*, 523 U.S. at 300.

Beyond the Article III limitations, the prudential side of the ripeness doctrine also weighs in favor of dismissing this case. "Prudentially, the ripeness doctrine exists to prevent the courts from wasting [their] resources by prematurely entangling [them]selves in abstract disagreements, and, where, as here, other branches of government are involved, to protect the other branches from judicial interference until their decisions are formalized and their 'effects felt in a concrete way by the challenging parties.'" *Nat'l Treasury Emps. Union v. United States*, 101 F.3d 1423, 1431 (D.C. Cir. 1996) (quoting *Abbott Lab'ys*, 387 U.S. at 148–49). Courts should refrain from opining on matters early, even where doing so could provide additional certainty for the parties because if they did so "courts would soon be overwhelmed with requests for what essentially would be advisory opinions because most business transactions could be priced more accurately if even a small portion of existing legal uncertainties were resolved." *Nat'l Park*, 538 U.S. at 811–12. The same is true here. The Plaintiff faces no threat of imminent harm as the Fund is not moving forward. Any additional involvement by the Court at this point serves only to produce an advisory opinion on an unripe matter.

There is also no hardship to Plaintiff from this Court withholding consideration of her claim. The bare existence of the Settlement Agreement and corresponding order has no "direct effect on the day-to-day" of Plaintiff. *Texas*, 523 U.S. at 301. She cannot rely on "abstraction[s]" in the absence of some "primary conduct [that] is affected." *Id.* at 302. The "hardship . . . of biding [her] time" is thus "insubstantial" particularly where the challenged Fund is now dead. *Id.* But requiring the parties to litigate in the abstract,

-12-

without a concrete set of facts against which to analyze Plaintiff's claims, would cause the Defendant significant hardship.

Doing so would cause the Court hardship as well. "Unnecessary decisions dissipate judicial energies better conserved for litigants who have a real need for official assistance." Wright & Miller, Fed. Practice and Procedure § 3532.1 (3d ed. April 2026 update). The Court should instead let the political resolution regarding the Fund stand on its own. "[T]he values of avoiding unnecessary constitutional determinations and establishing proper relationships between the judiciary and other branches of the federal government lie at the core of ripeness policies." *Id.* And "refusal to decide may itself be a healthy spur to inventive private or public planning that alters the course of possible conduct so as to achieve the desired ends in less troubling or more desirable fashion." *Id.*

### B.     <u>This Case Is Moot</u>

This is a rare case that is simultaneously premature *and* already moot. It does not present a "Case" or "Controversy," because "the issues presented are no longer live [and] the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike Inc.*, 568 U.S. 85, 91 (2013) (internal quotation marks omitted). The Acting Attorney General's statements to Congress makes it "absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* (quotation omitted). And that is true "[n]o matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit." *Id.*

The Acting Attorney General has testified to the House Appropriations Committee that the Fund was "not moving forward, period." House Hearing, at 40:30-42:50. He testified under oath to the Senate Judiciary Committee in his confirmation hearing to be the Attorney General of the United States of America that "the weaponization fund is dead, it's not moving forward." Nomination Hearing at 1:26:45–:49. Because "the court is not empowered to decide moot questions," *People of State of*

-13-

3:26-cv-3283-CAB-DDL

*Cal. v. San Pablo & T.R. Co.*, 149 U.S. 308, 314 (1893), this case should be dismissed in its entirety.

### C.     **Plaintiff Lacks Standing**

Independent of the mootness and ripeness issues—both of which independently deprive this Court of jurisdiction to hear this action—the Plaintiff has a third fatal flaw: she lacks Article III standing. "The requirement that the plaintiff possess a personal stake helps ensure that courts decide litigants' legal rights in specific cases, as Article III requires, and that courts do not opine on legal issues in response to citizens who might 'roam the country in search of government wrongdoing.'" *All. for Hippocratic Med.*, 602 U.S. at 379 (quoting *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 487 (1982)). The standing doctrine also "tends to assure that the legal questions presented to the court will be resolved, not in the rarified atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action." *Valley Forge*, 454 U.S. at 472; *accord Thomas*, 220 F.3d at 1138 ("The constitutional component of the ripeness inquiry is often treated under the rubric of standing and, in many cases, ripeness coincides squarely with standing's injury in fact prong.").

"[T]he standing requirement means that the federal courts may never need to decide some contested legal questions: 'Our system of government leaves many crucial decisions to the political processes,' where democratic debate can occur and a wide variety of interests and views can be weighed." *All. For Hippocratic Med.*, 602 U.S. at 380 (quoting *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 227 (1974)). Thus, federal courts do not "operate as an open forum for citizens 'to press general complaints about the way in which government goes about its business.'" *All. for Hippocratic Med.,* 602 U.S. at 379 (quoting *Allen v. Wright*, 468 U.S. 737, 760 (1984)). For the same reason, "taxpayer standing" does not exist just because a plaintiff "challenges [a] Government expenditure." *Hein*, 551 U.S. at 593.

"[T]o establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion*, 594 U.S. at 423.

The first requirement, "injury in fact," requires an injury that is "real and not abstract," and "particularized" to "the plaintiff in a personal and individual way" (rather than a "generalized grievance"). *All. for Hippocratic Med.*, 602 U.S. at 381 (internal quotation marks omitted). To count as a concrete harm, an alleged injury must have a "close relationship" to a harm "traditionally recognized as providing a basis for a lawsuit in American courts." *TransUnion*, 594 U.S. at 424 (internal quotation marks omitted). "The most obvious are traditional tangible harms, such as physical harms and monetary harms." *Id.* at 425. Certain "intangible harms can also be concrete" if they have a sufficient historical pedigree "as providing a basis for lawsuits in American courts." *Id.* "And when a plaintiff seeks prospective relief such as an injunction, the plaintiff must establish a sufficient likelihood of future injury." *All. for Hippocratic Med.*, 602 U.S. at 381.

To establish causation, a plaintiff must show that his alleged "injury likely was caused or likely will be caused by the defendant's conduct." *Id.* at 382. When a plaintiff does not challenge government action "that require[s] or forbid[s] some action by the plaintiff," causation "is ordinarily substantially more difficult to establish." *Id.* (internal quotation marks omitted). That is partly because "plaintiffs attempting to show causation generally cannot 'rely on speculation about the unfettered choices made by independent actors not before the courts.'" *Id.* at 383 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 415 n.5 (2013)). "The causation requirement precludes speculative links" where "downstream injury to plaintiffs" is not "sufficiently predictable," as well as "attenuated links . . . where the government action is so far removed from its distant (even if predictable) ripple effects." *Id.*

-15-

To establish redressability, plaintiffs must show "a likelihood that the requested relief will redress the alleged injury." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 103 (1998). Such relief must benefit the plaintiff "as opposed to the citizenry at large" or the "undifferentiated public interest." *Id.* at 106, 107. "[A]lthough a suitor may derive great comfort and joy" from a favorable judgment because they would believe "the United States Treasury is not cheated, that a wrongdoer gets his just deserts, or that the Nation's laws are faithfully enforced, that psychic satisfaction is not an acceptable Article III remedy because it does not redress a cognizable Article III injury." *Id.* at 107.

It is undisputed that the Fund is now not going forward. Plaintiff seeks only a declaration that a past action was unlawful. But that past action, with no future implementation has no conceivable impact on her moving forward. Putting aside for a moment the fact that this all highlights why the May 18 Memo was not a "final agency action" (because it would take several additional steps to implement), the reality is Plaintiff cannot obtain any relief from this Court that puts her in a position different to the one she is in currently. The "psychic satisfaction" of obtaining a favorable judgment is not enough to confer Article III standing. *Id.* And to the extent that the Plaintiff ever had standing to bring her APA claim (she did not) she must now admit that that injury is mooted by the Acting Attorney General's testimony. For her claim to not be mooted by the testimony, she would have to admit that it is either premature or that she has not suffered injury. She cannot have it both ways.

As an ideological objector to a proposed program that could have resulted in government expenditures, Plaintiff is no different from the many litigants who have unsuccessfully sought to invoke taxpayer standing; she has no individualized interests separate from "the interests of the public at large." *Hein*, 551 U.S. at 600.

The Plaintiff's proposed relief (vacating the non-existent Fund) also does nothing to remedy her claimed injury (lack of participation in notice and comment rulemaking). Ultimately, her requested relief would either have this court revive the Fund so she could

-16-

comment or leave her in the exact same position she is in today, unharmed by a Fund that is not moving forward. Either way, there is nothing left for the Court to resolve.

## II. PLAINTIFF FAILS TO PLEAD ANY COGNIZABLE CAUSE OF ACTION

Given all those justiciability issues, the Court has ample ground on which to dismiss the complaint on the basis of Rule 12(b)(1) alone and it need not reach the substance of the Plaintiff's APA claim. That said, the complaint also fails to allege facts that state a cognizable claim for which relief can be granted under the standard of Rule 12(b)(6). And while the court must assume the truth of well pleaded *facts*, it need not "assume the truth of legal conclusions cast in the form of factual allegations. *Ileto*, 349 F.3d at 1200.

The APA contemplates judicial review only of "final agency action." 5 U.S.C. § 704. "[T]wo conditions generally must be satisfied for agency action to be 'final' under the APA." *U.S. Army Corps of Eng'rs v. Hawkes Co., Inc.*, 578 U.S. 590, 597 (2016). "First, the action must mark the consummation of the agency's decision-making process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Id.* (quoting *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997)); *Ctr. for Biological Diversity v. Haaland*, 58 F. 4th 412, 417 (9th Cir. 2023). Put differently the APA permits review only of "circumscribed, discrete agency actions." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 62 (2004). It does not allow federal courts to review "flaws in [an agency's] entire program" of decision-making. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 892–93 (1990) (internal quotation marks omitted). It instead requires courts to follow a "case-by-case approach" that reviews challenged actions one at a time. *Id.* at 894. Importantly, the APA does not afford the sort of front-end review that Plaintiff seeks here.

"In determining whether an agency's action is final, we look to whether the action amounts to a definitive statement of the agency's position or has a direct and immediate effect on the day-to-day operations of the subject party." *Oregon Nat. Desert Ass'n v.*

-17-

3:26-cv-3283-CAB-DDL

*U.S. Forest Serv.*, 465 F.3d 977, 982 (9th Cir. 2006) (cleaned up). Thus, courts "look to see whether the agency 'has rendered its last word on the matter' to determine whether an action is final and is ripe for judicial review. *Id.* at 984 (quoting *Whitman v. Am. Trucking Ass'n,* 531 U.S. 457, 478 (2001)). In *Oregon Natural Desert* the Ninth Circuit held that the Forest Service's "issuance of annual operating instructions to permittees who graze livestock on national forest land constitutes final agency action" because the agency had already issued permits and a permittee's noncompliance with the annual instructions enabled the Forest Service to initiate legal proceedings to revoke the permit. *Id.* at 979, 987.

In *Center for Biological Diversity*, an interest group sought to force the Secretary of the Interior to amend the agency's Grizzley Bear Recovery Plan, developed pursuant to the Endangered Species Act ("ESA"), by petitioning the agency and bringing suit under the APA. 58 F.4th at 414. On appeal, the Ninth Circuit reaffirmed *Bennett* and *Oregon Natural Desert* holding that to determine whether an agency action is "final" for purposes of APA review, courts should "focus on the practical and legal effects of the agency action, not on labels, and finality is interpreted in a pragmatic and flexible manner." *Id.* at 417 (quotations omitted). Applying the *Bennett* criteria, the court held that "The caselaw makes plain that adoption of a recovery plan is not agency action by which rights or obligations have been determined, or from which legal consequences will flow." *Id.*

Here, there is no final agency action. Not even close. The Settlement Agreement and accompanying order do not award relief on any claims or even establish formal processes for the Fund to do so—that would have been up to the Members, who were not even appointed. No rights or obligations were determined, and no legal consequences flowed—let alone rights, obligations, or consequences that directly impact Plaintiff. If the adoption of a statutorily required plan is not a final agency action, it strains credulity to read a one-page memo that purports to *commence* (rather than *consummate*) an agency action as "final." It strains basic logic even further to suggest

-18-

that rights and legal obligations will be determined by a one-page memo—that on its own terms requires additional actions such as the appointment of Members (who must then adopt criteria to consider claims), meeting of Members, some period of an open claims submission process, and then award decisions—that the Acting Attorney General has sworn under oath is now not moving forward. It is much more consistent with the case law, and common sense, to read the action here as akin to the Grizzley Bear Recovery Plan and a non-final agency action.

Even if the Settlement Agreement were a "final agency action" under the APA (it is not), the Complaint fails to allege any facts that support its legal assertion that such action would be subject to notice and comment rulemaking.[4] At best the complaint contains a legal allegation that the "Fund Establishment Order and DOJ Notice constitute a rule that was subject to the notice-and-comment rulemaking requirements of the APA" ECF No. 1 at ¶ 48. But this sort of conclusory legal allegation that mirrors the elements of the case is insufficient, from a pleading standard, to survive a rule 12(b)(6) motion. *Hawkins*, 224 F. Supp. 3d at 1007.

## CONCLUSION

For the reasons stated, the court lacks subject-matter jurisdiction over this unripe and moot claim for which the Plaintiff lacks Article III standing to bring. Additionally, the Complaint does not state a claim for which relief can be granted. Therefore, the Court should dismiss the Compliant with prejudice.

Dated: July 31, 2026

STANLEY E. WOODWARD, JR.
*Associate Attorney General*


 */s/ ANDREW J. BLOCK*
Andrew J. Block

---

[4] Accordingly, Defendants reserve the right to make any and all arguments relating to why notice and comment rulemaking is not required in their reply brief.

*Senior Counsel to the Associate Attorney General*
United States Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530

*Counsel for Defendants*

3:26-cv-3283-CAB-DDL