Kimberly S. Hutchison (SBN 288682)
SINGLETON SCHREIBER
591 Camino de la Reina, Suite 1025
San Diego, CA 92108
Telephone: (619) 771-3473
Fax: (619) 255-1515
khutchison@singletonschreiber.com

Nandan M. Joshi (admitted pro hac vice)
Allison M. Zieve (admitted pro hac vice)
PUBLIC CITIZEN LITIGATION GROUP
1600 20th Street NW
Washington, DC 20009
Telephone: (202) 588-1000
njoshi@citizen.org
azieve@citizen.org

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ALLISON M. GILL,<br>Plaintiff,<br>v.<br>UNITED STATES DEPARTMENT OF JUSTICE; TODD BLANCHE, *in his official capacity as Attorney General*; ANTI-WEAPONIZATION FUND; and UNITED STATES OF AMERICA,<br>Defendants. | Case No. 3:26-cv-03283-CAB-DDL<br><br>**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT<br><br>Hearing Date: September 25, 2026<br>Judge: Hon. Cathy Ann Bencivengo<br>Place: San Diego<br><br>Date Filed: August 21, 2026 |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... ii
MOTION FOR SUMMARY JUDGMENT .......... 1
MEMORANDUM OF POINTS AND AUTHORITIES .......... 1
INTRODUCTION .......... 1
BACKGROUND .......... 3
LEGAL STANDARD .......... 7
ARGUMENT .......... 8
I. This Court has jurisdiction to decide Ms. Gill's notice-and-comment claim. .......... 8
  A. Ms. Gill has Article III standing. .......... 8
  B. This case is ripe. .......... 11
  C. Ms. Gill's claim is not moot. .......... 14
II. Defendants violated the APA when they established rules for the Fund without undertaking notice-and-comment procedures. .......... 16
  A. The Fund Rules are final agency action. .......... 16
  B. The Fund Rules are legislative rules that may be issued only after notice and opportunity for comment. .......... 19
III. The Court should ensure that Defendants do not re-establish the fund without notice-and-comment rulemaking. .......... 22
CONCLUSION .......... 24

## TABLE OF AUTHORITIES


**CASES** **Page(s)**

*Affirmed Energy, LLC v. FERC*,
166 F.4th 1070 (D.C. Cir. 2026) ... 21

*American Encore v. Fontes*,
152 F.4th 1097 (9th Cir. 2025) ... 8, 9

*American Forest Resource Council v. United States*,
77 F.4th 787 (D.C. Cir. 2023) ... 18

*Amoco Production Co. v. Village of Gambell*,
480 U.S. 531 (1987) ... 23

*Azar v. Allina Health Services*,
587 U.S. 566 (2019) ... 20

*Barnum Timber Co. v. EPA*,
633 F.3d 894 (9th Cir. 2011) ... 22

*Batterton v. Marshall*,
648 F.2d 694 (D.C. Cir. 1980) ... 19

*Bell v. City of Boise*,
709 F.3d 890 (9th Cir. 2013) ... 16

*Bennett v. Spear*,
520 U.S. 154 (1997) ... 16, 17

*Bowen v. Georgetown University Hospital*,
488 U.S. 204 (1988) ... 21

*Brown v. Duringer Law Group PLC*,
86 F.4th 1251 (9th Cir. 2023) ... 8

*California v. Azar*,
911 F.3d 558 (9th Cir. 2018) ... 23

*Carroll Shelby Licensing, Inc. v. Halicki*,
138 F.4th 1178 (9th Cir.), *cert. denied*, 146 S. Ct. 370 (2025) ... 23

*Cement Kiln Recycling Coalition v. EPA*,
493 F.3d 207 (D.C. Cir. 2007) ... 12

*Center for Biological Diversity v. EPA*,
168 F.4th 1164 (9th Cir. 2026) .......... 9

*Center for Biological Diversity v. Haaland*,
58 F.4th 412 (9th Cir. 2023) .......... 17, 19

*Chafin v. Chafin*,
568 U.S. 165 (2013) .......... 16

*Chicago & Southern Air Lines, Inc. v. Waterman Steamship Corp.*,
333 U.S. 103 (1948) .......... 16

*Chrysler Corp. v. Brown*,
441 U.S. 281 (1979) .......... 19, 20

*Citizens for Responsibility and Ethics in Washington v. DOJ*,
No. 1:26-cv-1789, 2026 WL 1802997 (D.D.C. June 23, 2026) .......... 6

*City of Billings v. TSA*,
153 F.4th 46 (D.C. Cir. 2025) .......... 20

*Colwell v. HHS*,
558 F.3d 1112 (9th Cir. 2009) .......... 11, 12

*Czyzewski v. Jevic Holding Corp.*,
580 U.S. 451 (2017) .......... 9

*Environmental Defense Center v. Bureau of Ocean Energy Management*,
36 F.4th 850 (9th Cir. 2022) .......... 12, 18

*FBI v. Fikre*,
601 U.S. 234 (2024) .......... 13, 14, 15, 16, 23

*Flagstaff Medical Center, Inc. v. Sullivan*,
962 F.2d 879 (9th Cir. 1992) .......... 21

*Flintkote Co. v. General Accident Assurance Co.*,
410 F. Supp. 2d 875 (N.D. Cal. 2006) .......... 13

*Floyd v. DOJ*,
No. 1:26-cv-1399, 2026 WL 1504001 (E.D. Va. May 29, 2026) .......... 6

*Floyd v. DOJ*,
No. 1:26-cv-1399, 2026 WL 1719431 (E.D. Va. June 12, 2026) .......... 7

*Floyd v. DOJ*,
No. 1:26-cv-1399, 2026 WL 1832366 (E.D. Va. June 24, 2026) ................ 6, 15

*Friends of the Earth, Inc. v. Laidlaw Environmental Services*,
528 U.S. 167 (2000) ................ 14

*Genesis HealthCare Corp. v. Symczyk*,
569 U.S. 66 (2013) ................ 14

*Gill v. DOJ*,
913 F.3d 1179 (9th Cir. 2019) ................ 8, 18

*Habeas Corpus Resource Center v. DOJ*,
816 F.3d 1241 (9th Cir. 2016) ................ 13

*Hein v. Freedom From Religion Found., Inc.*,
551 U.S. 587 (2007) ................ 11

*JEM Broadcasting Co. v. FCC*,
22 F.3d 320 (D.C. Cir. 1994) ................ 11

*Kern County Farm Bureau v. Allen*,
450 F.3d 1072 (9th Cir. 2006) ................ 10

*Kingman Water Co. v. United States*,
253 F.2d 588 (9th Cir. 1958) ................ 10

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*,
591 U.S. 657 (2020) ................ 20

*Long Island Care at Home, Ltd. v. Coke*,
551 U.S. 158 (2007) ................ 20

*Los Coyotes Band of Cahuilla & Cupeno Indians v. Jewell*,
729 F.3d 1025 (9th Cir. 2013) ................ 22

*Lujan v. National Wildlife Federation*,
497 U.S. 871 (1990) ................ 18

*Mada–Luna v. Fitzpatrick*,
813 F.2d 1006 (9th Cir. 1987) ................ 22

*Malama Makua v. Rumsfeld*,
136 F. Supp. 2d 1155 (D. Haw. 2001) ................ 13

*McCormack v. Herzog*,
788 F.3d 1017 (9th Cir. 2015) .......... 16

*Mobile Relay Associates v. FCC*,
457 F.3d 1 (D.C. Cir. 2006) .......... 21

*Mountain States Telephone & Telegraph Co. v. FCC*,
939 F.2d 1021 (D.C. Cir. 1991) .......... 18

*National Wildlife Federation v. Espy*,
45 F.3d 1337 (9th Cir. 1995) .......... 22

*Northwest Motorcycle Ass'n v. USDA*,
18 F.3d 1468 (9th Cir. 1994) .......... 7

*Norton v. Southern Utah Wilderness Alliance*,
542 U.S. 55 (2004) .......... 18

*Ochoa v. Public Consulting Group*,
48 F.4th 1102 (9th Cir. 2022) .......... 8

*Oklevueha Native American Church of Hawaii v. Holder*,
676 F.3d 829 (9th Cir. 2012) .......... 13

*Oregon Natural Desert Ass'n v. U.S. Forest Service*,
957 F.3d 1024 (9th Cir. 2020) .......... 18

*Parents Involved in Community Schools v. Seattle School District No. 1*,
551 U.S. 701 (2007) .......... 16

*Perez v. Mortgage Bankers Ass'n*,
575 U.S. 92 (2015) .......... 2, 19, 21

*Pickus v. U.S. Board of Parole*,
507 F.2d 1107 (D.C. Cir. 1974) .......... 22

*Planned Parenthood Great Northwest, Hawaii, Alaska, Indiana, Kentucky v. Labrador*,
122 F.4th 825 (9th Cir. 2024) .......... 8, 11, 15, 16

*Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic*,
400 U.S. 62 (1970) .......... 17

*Providence Yakima Medical Center v. Sebelius*,
611 F.3d 1181 (9th Cir. 2010) ........ 21

*Public Interest Legal Foundation, Inc. v. Nago*,
174 F.4th 664 (9th Cir. 2026),
*pet. for cert. filed*, No. 26-98 (July 17, 2026) ........ 12, 13

*Sackett v. EPA*,
566 U.S. 120 (2023) ........ 17

*Safari Club International v. Zinke*,
878 F.3d 316 (D.C. Cir. 2017) ........ 21

*San Francisco Herring Ass'n v. Department of the Interior*,
946 F.3d 564 (9th Cir. 2019) ........ 17

*Shalala v. Guernsey Memorial Hospital*,
514 U.S. 87 (1995) ........ 21

*Sierra Club v. Bosworth*,
510 F.3d 1016 (9th Cir. 2007) ........ 8

*Slayman v. FedEx Ground Package System, Inc.*,
765 F.3d 1033 (9th Cir. 2014) ........ 8

*Solite Corp. v. EPA*,
952 F.2d 473 (D.C. Cir. 1991) ........ 10

*Southern California Aerial Advertisers' Ass'n v. FAA*,
881 F.2d 672 (9th Cir. 1989) ........ 21

*Southern California Edison Co. v. FERC*,
770 F.2d 779 (9th Cir. 1985) ........ 22

*Sterling v. Feek*,
150 F.4th 1235 (9th Cir. 2025) ........ 8

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014) ........ 12, 13

*Texas v. United States*,
523 U.S. 296 (1998) ........ 13

*Thomas v. Union Carbide Agricultural Products Co.*,
473 U.S. 568 (1985) ........ 12

*Trump v. IRS*,
No. 1:26-cv-20609, 2026 WL 2015525 (S.D. Fla. July 13, 2026), *appeal pending*, *Trump v. Thirty-Five Former Federal Judges*, No. 26-12692 (11th Cir.) .......... 7

*Tulsa Professional Collection Servs. v. Pope*,
485 U.S. 478 (1988) .......... 9

*United States v. Morton Salt Co.*,
338 U.S. 632 (1950) .......... 19

*United States v. W.T. Grant Co.*,
345 U.S. 629 (1953) .......... 15

*United States v. Wurts*,
303 U.S. 414 (1938) .......... 10

*Waterkeeper Alliance v. EPA*,
140 F.4th 1193 (9th Cir. 2025) .......... 17, 21

*West Virginia v. EPA*,
597 U.S. 697 (2022) .......... 10, 14, 16

*Western Oil & Gas Ass'n v. EPA*,
633 F.2d 803 (9th Cir. 1980) .......... 22

*Yesler Terrace Community Council v. Cisneros*,
37 F.3d 442 (9th Cir. 1994) .......... 9, 20, 21

**<u>CONSTITUTION AND STATUTES</u>**

U.S. Const. art. III, § 2 .......... 8

5 U.S.C. § 551(5) .......... 19

5 U.S.C. § 553 .......... 2

5 U.S.C. § 553(b)(A) .......... 13, 19

5 U.S.C. § 553(b), (c) .......... 20

5 U.S.C. § 702 .......... 22

5 U.S.C. § 706(2)(A) .......... 8

5 U.S.C. § 706(2)(D) .......... 1, 22

## MOTION FOR SUMMARY JUDGMENT

Plaintiff Allison M. Gill moves for summary judgment pursuant to Federal Rule of Civil Procedure 56 on her claim for declaratory and injunctive relief against Defendants United States Department of Justice (DOJ), Attorney General Todd Blanche, the Anti-Weaponization Fund (Fund), and the United States of America.

On May 18, 2026, to carry out the terms of a settlement agreement with President Trump, Defendants announced the establishment of the Fund, the purpose of which is to provide a systematic process to hear and redress claims of harm from so-called "lawfare" and "weaponization" of government, and directed that $1.776 billion dollars be allocated to the Fund to pay such claims. The issue presented by this motion is whether Defendants issued a rule "without observance of procedure required by law" under the Administrative Procedure Act (APA), 5 U.S.C. § 706(2)(D), entitling Plaintiff to a declaration that the rule is unlawful and an injunction prohibiting Defendants from re-establishing the Fund without following APA-required procedures.

Plaintiff's motion is based on this notice of motion, the accompanying supporting memorandum of points and authorities, the accompanying supporting declarations and request for judicial notice, the papers, evidence, and records on file in this action, and any other written or oral evidence or argument as may be presented at or before the time this motion is heard by the Court.

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

The genesis of this case is unusual, but the legal principle that governs it is familiar. On May 18, 2026, the DOJ, led by then-Acting Attorney General Todd Blanche, established a new federal program called the "Anti-Weaponization Fund." The rules that established the Fund provided it the power to award up to $1.776 billion in claims, and to issue apologies, to individuals and entities harmed by so-

called "Lawfare" and "Weaponization" of government. Those rules carry out the terms of an unprecedented out-of-court "settlement agreement" that DOJ entered into with the sitting president, Donald J. Trump.

The APA, however, does not permit federal agencies to establish new programs with a mere stroke of the pen. Instead, the APA requires that agencies undertake a "three-step procedure" to promulgate new rules: An agency must provide the public with notice of its proposed rule, give interested parties an opportunity to comment on its proposal, and consider and respond to significant comments that the agency receives—a process commonly referred to as "notice-and-comment rulemaking." *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 96 (2015); *see* 5 U.S.C. § 553.

Had the government followed the procedure required by APA, Plaintiff Allison M. Gill would have had an opportunity to comment on the multiple and serious legal and policy questions raised by the administration's new compensation program. Ms. Gill helped found the podcast *Mueller, She Wrote* and believes that her criticism of the first Trump administration on that podcast led her then-employer, the Department of Veterans Affairs (VA), to target her for improper and unlawful political, personal, and/or ideological reasons. She therefore has a potential claim for compensation from the Fund and an interest in offering her views on the Fund's establishment, governance, operation, and legal soundness. Defendants deprived her of that opportunity, in violation of the APA, by establishing the Fund without following notice-and-comment procedures.

Faced with multiple lawsuits, political backlash, and the desire to be confirmed as Attorney General, Mr. Blanche issued a new order in early August—well after this lawsuit was filed—purporting to rescind the rules establishing the Fund. But Defendants remain contractually obligated to President Trump, two of his sons, and the Trump Organization to establish the Fund, and they have not stated

that they will not honor that commitment. This controversy therefore remains live. This Court should grant Plaintiff's motion for summary judgment, declare the agency action establishing the Fund unlawful, and enjoin Defendants from re-establishing the Fund except through the notice-and-comment procedures required by the APA.

## BACKGROUND

**Establishment of the Fund.** On January 29, 2026, President Trump, Donald J. Trump, Jr., Eric Trump, and the Trump Organization, LLC, sued the Department of the Treasury and the Internal Revenue Service (IRS) for over $10 billion in damages as compensation for the unauthorized disclosure of their tax returns by an IRS contractor. *Trump v. Internal Rev. Serv.*, No. 1:26-cv-20609 (S.D. Fla.) (Florida Lawsuit). On May 18, 2026, the plaintiffs in the Florida Lawsuit voluntarily dismissed their claims with prejudice. That same day, DOJ published on its website a settlement agreement between the plaintiffs and the two agency defendants in the Florida Lawsuit. *See* Settlement Agreement, Doc. 13-1. In addition to resolving the Florida Lawsuit, the agreement resolves two administrative claims filed by the President under the Federal Tort Claims Act seeking damages for prior DOJ investigations of his conduct. *Id.* at 2.

The settlement agreement provides that, "[t]o provide a systematic process to hear and redress claims of others who, like [the Florida Lawsuit] Plaintiffs, state that they incurred harm from similar Lawfare and Weaponization, the Attorney General of the United States agrees to create 'The Anti-Weaponization Fund.'" *Id.* at 3. The agreement states that "Lawfare and "Weaponization" are "the sustained use of the levers of government power by Democrat elected officials, political and career federal employees, contractors, and agents in order to target individuals, groups, and entities for improper and unlawful political, personal, and/or ideological reasons." *Id.* at 2. Among other things, the agreement requires the Fund to consist of five

members appointed by the Attorney General and removable by the President and to have "the power to issue formal apologies, issue monetary relief owed to claimants as a result of their legal rights, grant claims in whole or in part, deny claims in whole or in part, defer review of claims, and receive and request evidence or other support for claims, including requesting information from, or consulting with, federal agencies." *Id.* at 3–4. The Settlement Agreement states that the Fund must cease processing claims by December 1, 2028. *Id.* at 4. It directs the Attorney General to issue an order to "establish funding and any other relevant requirements, rules, conditions, terms, and waivers" for the Fund. *Id.* at 3.

Defendants released two items on May 18 that carry out the terms of the settlement agreement. First, the then-Acting Attorney General signed an "order establishing funding and any other relevant requirements for the Fund." Order, Doc. 13-2 (Fund Establishment Order). The Fund Establishment Order states that "[c]apitalized terms in this document," which include "Anti-Weaponization Fund," "shall have the same meaning as in the Settlement Agreement." *Id.* at 1. And it provides that $1,776,000,000 will be paid "to an account for the sole use by" the Fund and that this amount represents "the projected valuation of future claimants' claims." *Id.*

Second, DOJ posted a website notice announcing that the Attorney General had "established 'The Anti-Weaponization Fund' to provide a systematic process to hear and redress claims of others who suffered weaponization and lawfare." Ex. 1 at 2 (DOJ Notice). Mimicking the terms of the settlement agreement, the DOJ Notice outlines the Fund's governance and authority, providing that "[t]he Fund will consist of a Commission of five members appointed by the Attorney General" and removable by the President and granting it the "power to issue formal apologies and monetary relief owed to claimants." *Id.* at 3. The DOJ Notice directs that the "Fund shall cease processing claims no later than December 1, 2028." *Id.*

Defendants issued the Fund Establishment Order and the DOJ Notice (collectively, the Fund Rules) without publishing a proposed rule in the Federal Register giving interested persons an opportunity to submit comments on the provisions governing the Fund's operations.

**Plaintiff's Interest in the Fund.** Plaintiff Allison M. Gill is a former VA employee, where she served as a Health Systems Specialist prior to March 2020. *See* Gill Decl. ¶¶ 3–5.

Ms. Gill is also one of the founders of the *Mueller, She Wrote* podcast. *Id.* ¶ 4. Through that podcast and other media, Ms. Gill, beginning in 2017, expressed her views about the investigation led by special counsel Robert Mueller into Russian efforts to assist President Trump to prevail in the 2016 election. *Id*. Mr. Gill's views were often critical of President Trump. *Id.* Due to her criticism of President Trump, Ms. Gill believes that the VA subjected her to retaliatory actions, which ultimately led to her separation from the agency. *Id.* ¶ 5. Ms. Gill believes that the actions taken against her during the first Trump administration reflect the use of government power to target her for improper and unlawful political, personal, and/or ideological reasons. *Id.* ¶¶ 5–7.[1] Ms. Gill believes that she is, or should be, eligible to file a claim for compensation with the Fund. *Id.* ¶ 8.

As a potential claimant, Ms. Gill would have submitted comments expressing her views on the rules for the Fund if Defendants had followed notice-and-comment procedures. *Id.* ¶ 10–12. Among other things, she had concerns about capping the Fund at $1.776 billion, given the number of potential claims and claimants, including individuals convicted of crimes relating to the January 6, 2021, assault on Congress and the Fund's short duration. *Id.* ¶¶ 10–11. Mr. Gill also would have liked to comment on legal issues surrounding the Fund, to minimize the risk that any

[1] In 2023, Ms. Gill filed suit against various VA officials for employment-related claims. *See Gill v. McDonough*, No. 23-cv-1892-JES-MSB (S.D. Cal.).

compensation she received is subject recoupment if the Fund were declared unlawful. *Id.* ¶ 12. By failing to publish a proposed rule and seek comment, Defendants have denied Ms. Gill the opportunity to submit her views on these and other legal and policy questions presented by the compensation scheme that Defendants established to comply with their settlement agreement with President Trump.

**Post-Complaint-Filing Developments.** In addition to this action, lawsuits filed in federal courts in the District of Columbia and Virginia raise a variety of challenges to the Fund.[2] On May 26, 2026, the court in *Floyd* temporarily halted implementation of the Fund and scheduled a June 12 hearing on a motion for a preliminary injunction. *See Floyd v. DOJ*, No. 1:26-cv-1399, 2026 WL 1504001 (E.D. Va. May 29, 2026). On June 2, Mr. Blanche, testifying before a House of Representatives committee, noted the June 12 court hearing and stated that "we are not moving forward with the Fund." June 2 Hearing Transcript, Ex. 2 at 7. Then, at the June 12 hearing in *Floyd*, the government argued the case was moot in light of Mr. Blanche's congressional testimony.[3] That court provided the government "the option to provide a short, written declaration [with the court] under the penalty of perjury" to confirm that testimony and "render this litigation moot," but the government failed to do so. *Floyd v. DOJ*, No. 1:26-cv-1399, 2026 WL 1832366, at *1 (E.D. Va. June 24, 2026).[4] Accordingly, the Virginia court issued a preliminary

[2] *See Dunn v. Bessent*, No. 1:26-cv-1719 (D.D.C.); *Citizens for Ethics and Responsibility in Washington v. DOJ*, No. 1:26-cv-1789 (D.D.C.); *Gordon v. Blanche*, No. 1:26-cv-1907 (D.D.C.); *Floyd v. DOJ*, No. 1:26-cv-1399 (E.D. Va.).

[3] Defs.' Resp. to Pls. Mot. for a TRO or, in the Alternative, a Prelim. Inj. and for a 5 U.S.C. § 705 Stay, at 10–11, *Floyd v. DOJ*, No. 1:26-cv-1399 (E.D. Va. June 5, 2026), ECF 62.

[4] In another case, the court declined to issue a preliminary injunction, concluding that Mr. Blanche's June 2 congressional testimony and the counsel's in-court representations were sufficient to render the challenge likely moot. *Citizens for*

injunction to prevent implementation of the Fund, *see Floyd v. DOJ*, No. 1:26-cv-1399, 2026 WL 1719431 (E.D. Va. June 12, 2026), which remains in effect.

On July 13, 2026, the district court in the Florida Lawsuit issued an order sanctioning Mr. Trump's personal attorneys for filing that lawsuit for an improper purpose: "to gain the imprimatur of judicial legitimacy for a 'settlement' that had no viable basis in law or fact." *Trump v. IRS*, No. 1:26-cv-20609, 2026 WL 2015525, at *17 (S.D. Fla. July 13, 2026), *appeal pending*, *Trump v. Thirty-Five Former Federal Judges*, No. 26-12692 (11th Cir.). The sanctions order did not vacate the Fund Rules.

On July 15, 2026, the Senate Judiciary Committee held a hearing to consider Mr. Blanche's confirmation as Attorney General. Although he testified at the hearing that the "weaponization fund is dead" and "it's not moving forward," Ex. 3 at 10 (hearing transcript), he had not rescinded the Fund Establishment Order or DOJ Notice. Senators Cornyn and Tillis therefore indicated that they would not support Mr. Blanche's confirmation because of the continued existence of the Fund. Ex. 4 at 18, 21, 23. Although President Trump continued to vigorously defend the Fund, *id.* at 20, 22, Mr. Blanche secured Senators Cornyn's and Tillis's support for his confirmation by issuing an order rescinding the "Attorney General's May 18, 2026 Order establishing the Anti-Weaponization Fund." *See id.* at 24; Ex. 5 at 29–30 (Rescission Order). The Rescission Order does not address the DOJ Notice and does not suggest error in establishing the Fund Rules without undertaking notice-and-comment procedures.

## LEGAL STANDARD

Summary judgment is the appropriate standard for resolving cases under the APA. *Nw. Motorcycle Ass'n v. USDA*, 18 F.3d 1468, 1472 (9th Cir. 1994). The

---

*Responsibility and Ethics in Washington v. DOJ*, No. 1:26-cv-1789, 2026 WL 1802997 (D.D.C. June 23, 2026).

moving party is entitled to summary judgment where there are no genuine issues of material fact and the moving part is entitled to judgment as a matter of law. *Sierra Club v. Bosworth*, 510 F.3d 1016, 1022 (9th Cir. 2007). The Court resolves jurisdictional questions *de novo*. *Brown v. Duringer L. Grp. PLC*, 86 F.4th 1251, 1253 (9th Cir. 2023). Under the APA, a reviewing court "shall" "hold unlawful and set aside agency action, findings, and conclusions" found to be "without observance of procedure required by law." 5 U.S.C. § 706(2)(A). The "scope of the APA's notice and comment requirement" is a question of law that courts determine *de novo*. *Gill v. DOJ*, 913 F.3d 1179, 1186 (9th Cir. 2019).

## ARGUMENT

### I. THIS COURT HAS JURISDICTION TO DECIDE MS. GILL'S NOTICE-AND-COMMENT CLAIM.

#### A. Ms. Gill has Article III standing.

**1.** To satisfy the constitutional requirement that federal courts hear only "Cases" and "Controversies," U.S. Const. art. III, § 2, "a plaintiff must have standing to sue." *Am. Encore v. Fontes*, 152 F.4th 1097, 1109–10 (9th Cir. 2025). Article III standing "requires a plaintiff to have suffered an injury in fact, caused by the defendant's conduct, that can be redressed by a favorable result." *Planned Parenthood Great Nw., Haw., Alaska, Ind., Ky. v. Labrador*, 122 F.4th 825, 835–36 (9th Cir. 2024) (cleaned up). When evaluating standing, courts "look at the facts as they exist at the time the complaint was filed," *Slayman v. FedEx Ground Package Sys., Inc.*, 765 F.3d 1033, 1047 (9th Cir. 2014) (internal quotation marks omitted), and they "accept as valid the merits of [the plaintiff's] legal claims," *Am. Encore*, 152 F.4th at 1110 (internal quotation marks omitted).

"[A] plaintiff seeking injunctive relief for a procedural injury is held to a 'less demanding standard.'" *Sterling v. Feek*, 150 F.4th 1235, 1246 (9th Cir. 2025) (quoting *Ochoa v. Public Consulting Gp.*, 48 F.4th 1102, 1107 (9th Cir. 2022)).

"Such a plaintiff can instead establish standing by showing (i) the agency violated certain procedural rules, (ii) those rules protect a concrete interest of the plaintiff, and (iii) it is reasonably probable that the challenged action threatens that concrete interest." *Ctr. for Biological Diversity v. EPA*, 168 F.4th 1164, 1175 (9th Cir. 2026) (internal quotation marks omitted). "In short, a litigant who asserts a procedural violation … need only demonstrate that compliance with [the procedure] *could* protect his concrete interests." *Id.* (internal quotation marks omitted); *see Yesler Terrace Cmty. Council v. Cisneros*, 37 F.3d 442, 446–47 (9th Cir. 1994) (applying these standing principles to notice-and-comment violations).

Application of these principles shows that Ms. Gill has standing. Accepting the merits of Ms. Gill's claims, *Am. Encore*, 152 F.4th at 1110, Defendants injured her by unlawfully depriving her of her right to notice and an opportunity to comment on the Fund Rules. That deprivation, moreover, threatens her concrete interests. As a potential claimant, Ms. Gill has an economic and due process interest in the Fund and in the rules that apply to the processing of her claim for compensation. That interest exists even if her claim "*might* prove fruitless." *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 463 (2017) (recognizing harm that arises from "being unable to bring" a lawsuit or "obtain a settlement"); *Tulsa Prof'l Collection Servs. v. Pope*, 485 U.S. 478, 479, 485 (1988) (holding that "an unsecured claim" that arises out of a contract is "an intangible interest is property protected" by due process).

By issuing the Fund Rules without notice and comment, Defendants denied Ms. Gill the opportunity to comment on various aspects of the Fund that could affect her claim. For instance, by capping the Fund at $1.776 billion, Defendants have forced Ms. Gill to compete with other claimants for a share of the total pool. Claimants may be deprived of full compensation if that amount proves to be insufficient. Although the Fund Establishment Order states that the cap is "based on the projected valuation of future claimants' claims," Doc. 13-1 at 1, Defendants'

failure to provide notice and an opportunity for comment means that the basis for their valuation was neither disclosed nor tested by public exposure and feedback. *See Kern Cnty. Farm Bureau v. Allen*, 450 F.3d 1072, 1076 (9th Cir. 2006) ("An agency commits serious procedural error when it fails to reveal portions of the technical basis for a proposed rule in time to allow for meaningful commentary." (quoting *Solite Corp. v. EPA*, 952 F.2d 473, 484 (D.C. Cir. 1991)).

Other issues addressed by the Fund Rules also affect Ms. Gill's interests. Under the Rules, the Fund will stop processing in December 2028, regardless of whether a claim (such as Ms. Gill's) is pending. Ex. 1 at 3. The Fund Rules also will force Ms. Gill to compete for a portion of the Fund corpus with potentially constitutionally ineligible claimants—including pardoned criminals who engaged in the January 6, 2021, attack on the Capitol. *See* Ex. 6 at 37 ("[A]nyone with a claim against the United States for weaponization … could have pursued relief from the Anti-Weaponization Fund."). Moreover, if the Fund is legally infirm, any payment that Ms. Gill received could be subject to clawback. *See Kingman Water Co. v. United States*, 253 F.2d 588, 590 (9th Cir. 1958) ("The Government by appropriate action can recover funds which its agents have wrongfully, erroneously, or illegally paid." (quoting *United States v. Wurts*, 303 U.S. 414, 415 (1938)). Had Defendants complied with their procedural obligation under the APA, Ms. Gill would have submitted comment on these issues. *See* Gill Decl. ¶¶ 10–12.

**2.** In their motion to dismiss, Defendants argue that Ms. Gill lacks standing because "[i]t is undisputed that the Fund is now not going forward." Doc. 13 at 23. To start, Defendants' actions *after* Ms. Gill filed the complaint do not relate to standing, but to whether her claim is moot. *See West Virginia v. EPA*, 597 U.S. 697, 712 (2022); *see also infra* pp. 14–16 (explaining that Ms. Gill's claim is not moot). In any event, Ms. Gill *does* dispute Defendants' statement because Defendants have not addressed their obligations to President Trump under the settlement agreement

and President Trump and others have not waived their rights under the settlement agreement. Gill Decl. ¶ 13; Ex. 3 at 11 (testimony of Mr. Blanche that the settlement agreement remains an "enforceable document.").

Defendants are likewise incorrect that Ms. Gill's injury is not redressable because she "seeks only a declaration that a past action was unlawful." Doc. 13 at 23. Ms. Gill seeks declaratory and injunctive relief that would ensure that she is provided notice and an opportunity for comment on rules regarding the Fund that Defendants remain contractually obligated to create for the President.

Finally, Defendants are wrong to characterize Ms. Gill as "invok[ing] taxpayer standing." *Id*. Ms. Gill's standing is based on her status as a potential claimant for compensation for the harm she suffered as a critic of President Trump. Gill Decl. ¶¶ 3–7. Thus, unlike plaintiffs asserting taxpayer injury, she has individualized interests separate from "the interests of the public at large." *Hein v. Freedom From Religion Found., Inc.*, 551 U.S. 587, 600 (2007).

**B. This case is ripe.**

**1.** "For a suit to be ripe within the meaning of Article III, it must present 'concrete legal issues, presented in actual cases, not abstractions.'" *Planned Parenthood*, 122 F.4th at 839 (quoting *Colwell v. HHS*, 558 F.3d 1112, 1123 (9th Cir. 2009)). Although typically "synonymous with the injury-in-fact prong of the standing inquiry," "standing is primarily concerned with *who* is a proper party to litigate a particular matter, [while] ripeness addresses *when* that litigation may occur." *Id.* (internal quotation marks omitted). Because Ms. Gill's notice-and-comment claim "is concrete rather than abstract," "the ripeness requirement of Article III is satisfied." *Colwell*, 558 F.3d at 1123. "[W]hen a party complains of an agency's failure to provide notice and comment prior to acting, it is that failure which causes 'injury'; and interested parties are 'aggrieved' by the order promulgating the rules." *JEM Broad. Co. v. FCC*, 22 F.3d 320, 326 (D.C. Cir. 1994).

**2.** Ripeness also has a prudential component. "Prudential ripeness is a two-part inquiry that considers the fitness of the issues for judicial review and the hardship to the parties of withholding court consideration." *Pub. Int. Legal Found., Inc. v. Nago*, 174 F.4th 664, 678 (9th Cir. 2026) (internal quotation marks omitted), *pet. for cert. filed*, No. 26-98 (July 17, 2026). Under the fitness prong, "a claim is fit for decision if the issues raised are primarily legal, do not require further factual development, and the challenged action is final." *Id.* (cleaned up). "The second prong, hardship to the parties, serves as a counterbalance to any interest the judiciary has in delaying consideration of a case," and is "not relevant" if "there is no judicial interest in delaying review of [the plaintiffs'] challenge." *Id.* (internal quotation marks omitted).

This case meets this test as well. This case is fit for judicial review because "[t]he issue presented in this case is purely legal, and will not be clarified by further factual development." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 167 (2014) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 581 (1985)). As the D.C. Circuit has observed, "a purely legal claim in the context of a facial challenge"—such as a claim "that an agency violated the APA by failing to provide notice and opportunity for comment"—"is presumptively reviewable." *Cement Kiln Recycling Coal. v. EPA*, 493 F.3d 207, 215 (D.C. Cir. 2007) (internal quotation marks omitted). In an analogous context, the Ninth Circuit has explained "for claims of procedural injury, … the need for factual development ceases when the alleged procedural violation is complete." *Envtl. Def. Ctr. v. Bureau of Ocean Energy Mgmt.*, 36 F.4th 850, 871–72 (9th Cir. 2022) (addressing claims for procedural violations of the National Environmental Policy Act).[5] And because Ms. Gill's

[5] The Ninth Circuit has held that notice-and-comment claims may not be ripe if there is "ambiguity" over whether the challenged action is exempt from the notice-and-comment process as an interpretive rule or a policy statement and further agency action would clarify that ambiguity. *Colwell*, 558 F.3d at 1127; *see also* 5

claim is purely legal and fit for review, the hardship prong is "not relevant." *Pub. Int. Legal Found.*, 174 F.4th at 678; *see Oklevueha Native Am. Church of Haw. v. Holder*, 676 F.3d 829, 838 (9th Cir. 2012) ("As Plaintiffs' claims are fit for review now, we do not reach the second factor of the prudential ripeness inquiry."). There is "no judicial interest in delaying review," *Pub. Int. Legal Found.*, 174 F.4th at 678, particularly given that "a federal court's obligation to hear and decide cases within its jurisdiction is virtually unflagging." *Susan B. Anthony List*, 573 U.S. at 167 (internal quotation marks omitted), and, contrary to Defendants' contention, resolution of Ms. Gill's claim does not turn on "contingent future events," Doc. 13 at 18 (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)).

In their motion to dismiss, Defendants do not dispute that Ms. Gill's claim is purely legal and fit for review. Nonetheless, they argue that the case is unripe because "the Fund is not moving forward." Doc. 13 at 19. "Ripeness," however, "is evaluated at the commencement of a lawsuit, and is not subsequently defeated through changed circumstances." *Flintkote Co. v. Gen. Accident Assurance Co.*, 410 F. Supp. 2d 875, 882 (N.D. Cal. 2006). A defendant "cannot avoid judicial scrutiny by withdrawing [the challenged action] and arguing that the case is no longer ripe." *Malama Makua v. Rumsfeld*, 136 F. Supp. 2d 1155, 1161 (D. Haw. 2001). Any other rule would allow a defendant to use ripeness principles to circumvent its "formidable burden" of demonstrating mootness. *FBI v. Fikre*, 601 U.S. 234, 241 (2024) (internal quotation marks omitted). "A federal court's constitutional authority cannot be so readily manipulated." *Id.*

---

U.S.C. § 553(b)(A). Here, Defendants did not invoke an exception to notice-and-comment rulemaking, and further agency action is not needed to clarify whether the Fund Rules constitute a rule subject to notice and comment. *Cf. Habeas Corpus Resource Ctr. v. DOJ*, 816 F.3d 1241, 1254 n.17 (9th Cir. 2016) (stating that the Attorney General's decision not to use notice-and-comment rulemaking presents a "procedural claim [that] is ripe for review").

### C. Ms. Gill's claim is not moot.

Unlike standing and ripeness, which "must exist at the commencement of the litigation," *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 189 (2000), "the doctrine of *mootness* … addresses whether 'an intervening circumstance [has] deprive[d] the plaintiff of a personal stake in the outcome of the lawsuit." *West Virginia*, 597 U.S. at 719 (quoting *Genesis HealthCare Corp. v. Symczyk*, 569 U.S. 66, 72 (2013)). "The distinction matters because the Government, not [the plaintiff], bears the burden to establish that a once-live case has become moot." *Id.*

The government may not "automatically moot a case by the simple expedient of suspending its challenged conduct after it is sued." *Fikre*, 601 U.S. at 241 (internal quotation marks omitted). The government's "voluntary cessation of a challenged practice will moot a case only if [it] can show that the practice cannot reasonably be expected to recur." *Id.* (internal quotation marks omitted). The government's burden is "formidable" because, "[w]ere the rule more forgiving, a defendant might suspend its challenged conduct after being sued, win dismissal, and later pick up where it left off; it might even repeat this cycle as necessary until it achieves all of its allegedly unlawful ends." *Id.* (internal quotation marks omitted).

In this case, Defendants cannot satisfy their formidable burden. Defendants established the Fund to comply with their obligations under the settlement agreement with President Trump and others. *See* Doc. No. 13-2 at 1. Defendants have not repudiated those contractual commitments; to the contrary, Mr. Blanche has testified that the settlement agreement remains an "enforceable document." Ex. 3 at 11. And although Mr. Blanche testified that the Fund is "dead" and not "moving forward," *id.* at 10, that representation was tied to pending litigation and Mr. Blanche's desire for Senate confirmation—which he has since attained. Mr.

Blanche's testimony does not prevent Defendants from resurrecting the Fund at "some more propitious moment." *Fikre*, 601 U.S. at 243.

Likewise, the Rescission Order does not render this case moot. Mr. Blanche resisted taking formal action to rescind the Fund Rules for several weeks. *See Floyd*, 2026 WL 1832366, at *1–2. He agreed to the Rescission Order only to obtain support from Senators Cornyn and Tillis for his confirmation as Attorney General, which has now occurred. *See* Ex. 4 at 24. The Rescission Order does not address Defendants' obligations under the settlement agreement with President Trump, does not admit legal error in issuing the Fund Rules without notice and comment, and does not contain an enforceable commitment not to resurrect the Fund. *See Fikre*, 601 U.S. at 242 (holding that government's representation did not moot the case because it did not "speak[] to whether the government might" take the challenged action "in the future" based on new information).

Moreover, the Rescission Order appears to have been designed with an eye towards defeating the courts' jurisdiction over what the Order describes as "several frivolous lawsuits"—including this one. Ex. 5 at 29. The Ninth Circuit rejected a similar gambit in *Planned Parenthood*. There, the Attorney General of Idaho attempted to moot a challenge to his interpretation of state abortion restrictions by withdrawing the interpretation and issuing an opinion that described the limits of his enforcement authority. 122 F.4th at 834–35. The Ninth Circuit held that, because the Idaho "Attorney General still has not repudiated" his interpretation of the Idaho law or "provided an alternative interpretation," his "statements during the pendency of the litigation do not change the fact that absent an injunction "the Attorney General remains 'free to return to his old ways.'" *Id.* at 841 (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953)). Here, Defendants "'nowhere suggest[] that if this litigation is resolved in [their] favor [they] will not' reimpose" the rules governing the Fund without undertaking notice-and-comment procedures.

*West Virginia*, 597 U.S. at 720 (quoting *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719 (2007)). Thus, "[t]his case is not moot despite the Attorney General's efforts to make it so." *Planned Parenthood*, 122 F.4th at 841.

Furthermore, although the Fund Establishment Order has been rescinded (for now), this Court can still provide "effectual relief." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (internal quotation marks omitted). By granting Ms. Gill's request for declaratory and injunctive relief, the Court would preclude Defendants from re-establishing the Fund without undertaking notice-and-comment procedures. Because Defendants do not admit error in failing to follow notice-and-comment procedures, "the ease with which" they could revive the Fund without undertaking notice and comment "counsels against a finding of mootness." *Bell v. City of Boise*, 709 F.3d 890, 900 (9th Cir. 2013); *see also McCormack v. Herzog*, 788 F.3d 1017, 1025 (9th Cir. 2015) ("[W]hile a statutory change 'is usually enough to render a case moot,' an executive action that is not governed by any clear or codified procedures cannot moot a claim." (quoting *Bell*, 709 F.3d at 899)). In these circumstances, Defendants' "sparse" assurances "falls short of demonstrating that [they] cannot reasonably be expected to do again in the future what [they are] alleged to have done in the past." *Fikre*, 601 U.S. at 242.

## II. DEFENDANTS VIOLATED THE APA WHEN THEY ESTABLISHED RULES FOR THE FUND WITHOUT UNDERTAKING NOTICE-AND-COMMENT PROCEDURES.

### A. The Fund Rules are final agency action.

The APA authorizes courts to review a "final agency action." 5 U.S.C. § 704. To be final, the action "must mark the 'consummation' of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (quoting *Chi. & S. Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 113 (1948)). In addition, "the action must be one by which 'rights or obligations have been determined,' or from which

'legal consequences will flow.'" *Id.* at 178 (quoting *Port of Bos. Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic*, 400 U.S. 62, 71 (1970)). An action is final if it "amounts to a definitive statement of the agency's position." *Waterkeeper All. v. EPA*, 140 F.4th 1193, 1207 (9th Cir. 2025). The courts "focus on the practical and legal effects of the agency action,' not on labels, and finality is 'interpreted in a pragmatic and flexible manner." *Id.* (quoting *Ctr. for Biological Diversity v. Haaland*, 58 F.4th 412, 417 (9th Cir. 2023)).

The Fund Rules easily meet that test. First, the Fund Rules consummate Defendants' implementation of various terms of the settlement agreement: They establish the Fund, define key terms by reference to the settlement agreement, create a fund corpus of $1.776 billion, provide for the appointment of a five-member commission by the Attorney General, grant authority to the Fund to issue apologies and make payments, and set a termination date for processing claims. Doc. 13-2 at 1; Ex. 1 at 3. Although the Rescission Order later rescinded the Fund Establishment Order, that later action did not affect the final nature of the Fund Rules at the time they were issued. *See San Francisco Herring Ass'n v. Dep't of the Interior*, 946 F.3d 564, 579 (9th Cir. 2019) ("The mere possibility that [the] agency might reconsider ... does not suffice to make an otherwise final agency action nonfinal." (quoting *Sackett v. EPA*, 566 U.S. 120, 127 (2023)).

Second, the Fund Rules determine rights and obligations and produce "legal consequences." *Bennett*, 520 U.S. at 178. In particular, the Fund Rules create a new federal compensation program, establish eligibility, create a fixed pool of money to pay claims, and set a deadline by which claims must be processed. By their very nature, the rules are not "purely advisory," but "alter the legal regime" and have "direct and appreciable legal consequences." *Bennett*, 520 U.S. at 178.

In moving to dismiss, Defendants invoked the principle that the APA permits judicial review of "discrete" agency actions, not programmatic challenges. Doc. 13

at 24 (quoting *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 62 (2004), and citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 892–93 (1990)). The bar against programmatic challenges precludes plaintiffs from seeking review of decisions not tied to any "*specific* action." *Am. Forest Res. Council v. United States*, 77 F.4th 787, 805 (D.C. Cir. 2023); *see Oregon Nat. Desert Ass'n v. U.S. Forest Serv.*, 957 F.3d 1024, 1031 (9th Cir. 2020) (stating "a party cannot challenge an entire agency management regime under the auspices of the APA"). Ms. Gill, however, is not pursuing a "generic challenge to" DOJ's operation, but to a "specific order or regulation, applying … particular measure[s]," for instance, implementation of the settlement agreement's requirement that the Fund stop paying claims in December 2028. *Nat'l Wildlife Fed'n*, 497 U.S. at 890–91 n.2. The Fund Rules thus are a "circumscribed, discrete agency action[]" subject to APA review. *S. Utah Wilderness All.*, 542 U.S. at 62.

Second, Defendants argue that the Fund Rules are not final because they did not finish setting up all aspects of the Fund. Doc. 13 at 25 (stating that the Fund Rules "do not award relief on any claims or even establish formal processes for the Fund to do so"). But the Fund Rules did establish rules about the type of claims eligible for compensation, the board that would operate the Fund, and the termination date for the payment of claims. Moreover, agency action "can be final even if its legal or practical effects are contingent on a future event." *Gill*, 913 F.3d at 1185; *see Env't Def. Ctr.*, 36 F.4th at 868 (holding that an environmental review was final although "individual permit application[s]" had not yet "been approved"). Because agency action "may be final though it is not the very last step in the administrative process," *Mountain States Tel. & Tel. Co. v. FCC*, 939 F.2d 1021, 1027 (D.C. Cir. 1991), Defendants' contention that additional actions are needed before claims may be paid from the Fund does not affect the finality of the Fund Rules that are the subject of Ms. Gill's procedural challenge.

**B. The Fund Rules are legislative rules that may be issued only after notice and opportunity for comment.**

**1.** Enacted in 1946, the APA "was framed against a background of rapid expansion of the administrative process as a check upon administrators whose zeal might otherwise have carried them to excesses not contemplated in legislation creating their offices." *Mortg. Bankers Ass'n*, 575 U.S. at 109 (Scalia, J. concurring in judgment) (quoting *United States v. Morton Salt Co.*, 338 U.S. 632, 644 (1950)). One check on agency authority is the "three-step procedure for so-called 'notice-and-comment rulemaking.'" *Id.* at 96 (quoting *Chrysler Corp. v. Brown*, 441 U.S. 281, 302–03 (1979)). Unless a statutory exception to notice and comment applies, this procedure is triggered when an agency engages in "rule making," which the APA defines as the "agency process for formulating, amending, or repealing a rule." 5 U.S.C. § 551(5).[6] A rule "is defined broadly to include 'statement[s] of general or particular applicability and future effect' that are designed to 'implement, interpret, or prescribe law or policy.'" *Mortg. Bankers Ass'n*, 575 U.S. at 95–96 (quoting 5 U.S.C. § 551(4)). It "include[s] nearly every statement an agency may make." *Haaland*, 58 F.4th at 421 (quoting *Batterton v. Marshall*, 648 F.2d 694, 700 (D.C. Cir. 1980)). Rules that must be promulgated through notice-and-comment procedures are typically referred to as "legislative rules." *Mortg. Bankers Ass'n*, 575 U.S. at 96.

To promulgate a legislative rule, an agency must first (1) publish "[g]eneral notice of proposed rule making" in the Federal Register, including "the legal authority under which the rule is proposed" and "either the terms or substance of the proposed rule or a description of the subjects and issues involved"; "give interested persons an opportunity to participate in the rule making through submission of

---

[6] Notice-and-comment procedures are not required for "interpretative rules [also called interpretive rules], general statements of policy, or rules of agency organization, procedure, or practice." 5 U.S.C. § 553(b)(A).

written data, views, or arguments," and (3) "consider[] … the relevant matter presented" and "incorporate in the rules adopted a concise general statement of their basis and purpose." 5 U.S.C. § 553(b), (c). "The object" of this procedure … is one of fair notice." *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 684 (2020) (brackets removed; quoting *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 174 (2007)). "Notice and comment gives affected parties fair warning of potential changes in the law and an opportunity to be heard on those changes—and it affords the agency a chance to avoid errors and make a more informed decision." *Azar v. Allina Health Servs.*, 587 U.S. 566, 582 (2019); *see Chrysler Corp.*, 441 U.S. at 316 ("In enacting the APA, Congress made a judgment that notions of fairness and informed administrative decisionmaking require that agency decisions be made only after affording interested persons notice and an opportunity to comment."). As the D.C. Circuit recently explained, "a central object of requiring that the public be afforded notice and an opportunity to comment is to assure that the agency fully understands the potential impact of a proposed rule before finalizing it." *City of Billings v. TSA*, 153 F.4th 46, 53 (D.C. Cir. 2025). By affording interested parties "meaningful input" about a proposed rule, the notice-and-comment process "might alter an agency's initial assumptions about whether (and how) a proposed rule affects the public at large." *Id.*

To determine whether an agency has issued a legislative rule, "courts have long looked to the contents of the agency's action, not the agency's self-serving label." *Allina Health Servs.*, 587 U.S. at 575; *Yesler Terrace Cmty. Council*, 37 F.3d at 449 ("The form of the proceeding is not dispositive; what counts is its effect."). Thus, agencies are not permitted to "avoid notice and comment simply by mislabeling their substantive pronouncements." *Allina Health Servs.*, 587 U.S. at 575. When an agency takes an action that "affects the rights of broad classes of unspecified individuals" and "is prospective, and has a definitive effect on

individuals only after the rule subsequently is applied," the action is a legislative rule. *Providence Yakima Med. Ctr. v. Sebelius*, 611 F.3d 1181, 1188 (9th Cir. 2010) (quoting *Yesler Terrace Cmty. Council*, 37 F.3d at 488); *see also Safari Club Int'l v. Zinke*, 878 F.3d 316, 332–33 (D.C. Cir. 2017) (explaining that "most legislative rules are generally applicable" and "have only 'future effect.'").

**2.** The Fund Rules are legislative rules. They "reflect[] a statement of the agency's position with respect to" the establishment, operation, and duration of the Fund, including capping the Fund at $1.776 billion for all claimants—a figure not mentioned in the settlement agreement. *Waterkeeper All.*, 140 F.4th at 1206. The Fund Rules have future effect—they operate "purely prospectively" and do not alter "the past legal consequences of an action." *Affirmed Energy, LLC v. FERC*, 166 F.4th 1070, 1082 (D.C. Cir. 2026) (quoting *Mobile Relay Assocs. v. FCC*, 457 F.3d 1, 365 (D.C. Cir. 2006)) (addressing standard for impermissibly retroactive regulations); *see also Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 216 (1988) (Scalia, J., concurring) (discussing connection between the APA's definition of "rule" and the presumption against retroactivity). And the Fund Rules necessarily "implement" and "prescribe" Defendants' policies regarding the Fund. *See S. Cal. Aerial Advertisers' Ass'n v. FAA*, 881 F.2d 672, 677 (9th Cir. 1989) (holding that agency letter closing airspace to certain aircraft was a rule).

The Fund Rules do not fall into any of the "narrowly construed" exceptions to the notice-and-comment process. *Flagstaff Med. Ctr., Inc. v. Sullivan*, 962 F.2d 879, 886 (9th Cir. 1992). The Fund Rules are not interpretive rules because they do not "advise the public of the agency's construction of the statutes and rules which it administers." *Mortg. Bankers Ass'n*, 575 U.S. at 97 (quoting *Shalala v. Guernsey Mem. Hosp.*, 514 U.S. 87, 99 (1995)). They are not policy statements because they do more than "provide[] *guidance* to agency officials in exercising their discretionary powers" and they do not "preserv[e]… flexibility," by, for instance,

by allowing total compensation to exceed $1.776 billion. *Los Coyotes Band of Cahuilla & Cupeno Indians v. Jewell*, 729 F.3d 1025, 1039 (9th Cir. 2013) (quoting *Mada–Luna v. Fitzpatrick*, 813 F.2d 1006, 1013 (9th Cir. 1987)). And they are not procedural rules, which concern "technical regulation of the form of agency action and proceedings," *S. Cal. Edison Co. v. FERC*, 770 F.2d 779, 783 (9th Cir. 1985) (quoting *Pickus v. U.S. Bd. of Parole*, 507 F.2d 1107, 1113 (D.C. Cir. 1974)), rather than foundational decisions about the establishment, operation, and duration of a new agency action.

The Fund Rules "create law," *S. Cal. Edison Co.*, 770 F.2d at 783, and are thus legislative in nature. And because they are legislative rules, the APA requires use of notice-and-comment rulemaking to issue them.

## III. THE COURT SHOULD ENSURE THAT DEFENDANTS DO NOT RE-ESTABLISH THE FUND WITHOUT NOTICE-AND-COMMENT RULEMAKING.

"The proper remedy" when an agency fails to provide notice is "reenactment of the deliberative process with correct provision for the petitioners' participation." *W. Oil & Gas Ass'n v. EPA*, 633 F.2d 803 (9th Cir. 1980). To effectuate that remedy, the APA provides that a "reviewing court shall … hold unlawful and set aside agency action" taken "without observance of procedure required by law." 5 U.S.C. § 706(2)(D). A district court has the power under the APA to grant declaratory judgment and injunctive relief. *Barnum Timber Co. v. EPA*, 633 F.3d 894, 899 (9th Cir. 2011); *see* 5 U.S.C. § 702. "The court's decision to grant or deny injunctive or declaratory relief under APA is controlled by principles of equity." *Nat'l Wildlife Fed'n v. Espy*, 45 F.3d 1337, 1343 (9th Cir. 1995).

Because the Fund Rules were promulgated without notice and comment, the Court should vacate those rules. Although the Rescission Order purports to rescind the Fund Establishment Order, it does not address the DOJ Notice, which sets forth

for the Fund many of the requirements to which Defendants agreed in the settlement agreement.

The Court should also exercise its equitable authority and issue declaratory and injunctive relief to prevent Defendants from re-establishing the Fund by fiat at "some more propitious moment." *Fikre*, 601 U.S. at 243. "Declaratory relief is appropriate (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Carroll Shelby Licensing, Inc. v. Halicki*, 138 F.4th 1178, 1189 (9th Cir.), *cert. denied,* 146 S. Ct. 370 (2025) (internal quotation marks omitted). Injunctive relief is appropriate when a party has succeeded on the merits, it is "likely to suffer irreparable harm," the "balance of equities tips in its favor," and "an injunction is in the public interest." *California v. Azar*, 911 F.3d 558, 575 (9th Cir. 2018) (cleaned up) (discussing standards for preliminary injunction); *see Amoco Prod. Co. v. Village of Gambell,* 480 U.S. 531, 546 n.12 (1987) (explaining that the standards for preliminary and permanent injunctions are "essentially the same" except that a plaintiff must show "actual success" on the merits rather than a "likelihood of success" to obtain permanent relief). "When the government is a party, the last two factors merge." *Azar*, 911 F.3d at 575. Here, declaratory relief would clarify Defendants' procedural obligations with respect to the Fund and address the uncertainty that their prior actions have created. Injunctive relief is also needed to prevent the irreparable harm that Ms. Gill would suffer if Defendants comply with their contractual duty under their settlement agreement by moving forward with the Fund and paying compensation to other claimants (perhaps secretly).

## CONCLUSION

For the foregoing reasons, this Court should grant Plaintiff's motion for summary judgment and award Plaintiff the declaratory and injunctive relief she requests.

Dated: August 21, 2026

Respectfully submitted,

PUBLIC CITIZEN LITIGATION GROUP

/s/ Nandan M. Joshi
NANDAN M. JOSHI

*Counsel for Plaintiff Allison M. Gill*
Email: njoshi@citizen.org