**Exhibit 3**

**Declaration of Nandan M. Joshi in Support of Plaintiff's Motion for Summary Judgment**

**Gill v. U.S. Department of Justice *et al*.**

**Case No. 3:26-cv-03283-CAB-DDL**

like to enter in the record supporting Mr. Blanche nomination from former Attorney General John Ashcroft, and this is a quote from the letter. "This rule of law is the best friend of liberty. To safeguard this core value, America needs an Attorney General exclusively devoted to the rule of law and will honor his oath to the Constitution. Todd Blanche is the right person for that responsibility. His record and credentials undergird my wholehearted support for his nomination."

Without objection, that'll be entered into the record.

[The letter appears in the appendix:]

/ COMMITTEE INSERT

Chairman Grassley. Senator Cornyn.

Senator Cornyn. Good morning, Mr. Blanche. Congratulations on your nomination. There's a lot to admire about your record or service to our country, and I respect the fact that you want to continue that service as the Attorney General. As I told you in my office, I think the Attorney General has the hardest job in Washington, D.C. because you are at the same time a member of the President's Cabinet, subject to dismissal, of whatever the President wants for any reason or no reason at all, but then you also have a duty as the chief law enforcement officer of the United States, and I think it's a very, very difficult balance. And I want to ask you a little bit

about that, particularly in connection with the settlement of the tax case.

There's so much that's unusual about this. First of all, the fact that the tax returns were leaked by a IRS contractor, Charles Littlejohn, who was appropriately convicted of a crime for doing that. President Trump and his family were definitely victims of a crime there, but it happened back in 2020, and the lawsuit wasn't brought until 2026. So, with the 2-year statute of limitations, it seems to me that that was something I know that was a subject of pleading in the complaint and attempt to avoid the two-year statute of limitations, but that struck me as unusual. But let's talk a little bit about the settlement agreement and the release.

First of all, I believe you have said that the weaponization fund is a moot issue. Is that your position?

Mr. Blanche. Yes, it is a moot issue, meaning there is no weaponization fund. The weaponization fund is dead. It's not moving forward.

Senator Cornyn. Well, I would refer you to the settlement agreement. Do you happen to have a copy of that in front of you?

Mr. Blanche. I do not, Senator.

Senator Cornyn. Okay. Well, you probably know what's in it.

Mr. Blanche. I'm familiar with it, yes.

Senator Cornyn. I'm sure you are. On page 4, "This settlement agreement may be modified only upon the written agreement of the parties." Has there been a written agreement of the parties to modify the settlement fund?

Mr. Blanche. No, the settlement fund's just not moving forward. There's no modification. It never started. No money went from the Treasury to any other account. There's no commissioners. It's not moving forward.

Senator Cornyn. Well, so the settlement agreement remains as it was originally, but I hear what you're saying. Is the settlement agreement enforceable as a contract by the parties?

Mr. Blanche. Well, yes, it's an enforceable document. So, I suppose if President Trump's counsel sought to enforce it, they potentially could, but --

Senator Cornyn. Including the weaponization fund.

Mr. Blanche. Well, they could try to enforce the contract. They can't force the Department of Justice to move forward with the weaponization fund. They could potentially say that, I suppose, that we breached by not moving forward. They haven't done that, and I'm not aware that they're planning on doing that. Like I said, Senator, and Senator Durbin talked about this, but I've talked

extensively with you and other colleagues about potentially codifying so there's no weaponization fund, which is certainly something that could be done. And I wasn't meaning to insult this body, but just in response to questions from senators about whether that could be done, we very much are okay with that.

Senator Cornyn. But just to be clear, the President of the United States, who is a plaintiff in this lawsuit, has not agreed in writing to delete the weaponization fund. And there's no guarantee that he or one of the other plaintiffs might raise that issue by way of a breach of contract lawsuit in the future.

Mr. Blanche. Well, Senator, the plaintiffs have no power over the fund. The fund was administered solely by the five commissioners and through the Department of Justice, so, no, they don't have any power with respect to the fund at all. I suppose they could bring a lawsuit and then we would litigate it, but even if we were litigating it, there's no fund, so the results of such litigation, whatever it would be, wouldn't be revival of the fund.

[Chart]

Senator Cornyn. I want to ask you about the release, and I know I'm guilty of what a lot of lawyers are guilty of and having a chart you can't read, but I know you're familiar with this document, which is the release that you

signed on May 19, 2026. First of all, does this purport to release parties or people who were not parties to the lawsuit?

Mr. Blanche. No, Senator.

Senator Cornyn. Well, it says here that "Claims asserted by defendants or any of the plaintiffs or related or affiliated individuals, including without limitation, family or others filing jointly or parties including trust, parent, sister, or related companies, affiliates, or subsidiaries." They weren't a party to the lawsuit, were they?

Mr. Blanche. I didn't hear everything you just said, Senator, but the only parties that had any release as respect to any potential audits, even if they existed, were the plaintiffs in the lawsuit.

Senator Cornyn. Did you talk to the President about the settlement? He originally sued for $10 billion and settled for an apology in this weaponization fund and then the release of future liability for tax audits. Did you discuss it with him?

Mr. Blanche. No, I did not. He had outside counsel. I did not discuss it with his outside counsel either. It was done by other people in the office.

Senator Cornyn. And this was a lawsuit brought --

Mr. Blanche. Can I qualify that?

Senator Cornyn. Sure.

Mr. Blanche. When we determined not to move forward, as the President has said, that's the only time that he and I had any conversations about this at all, was after when it was dead, when we said we're not moving forward.

Senator Cornyn. And this lawsuit was brought against the IRS and Treasury, yet this release purports to apply to defendants or other agencies or departments. So, does this release apply to, let's say, an investigation by the Security and Exchange Commission or some other Federal Agency?

Mr. Blanche. No. That's the standard language that we use when we enter into settlements between plaintiffs and the IRS, but, no, it doesn't bind. It's issued by me because statutes require and authorize me to do that as opposed to other Cabinet members, and in this case, it binds only the IRS and, by extension, the Treasury.

Senator Cornyn. Well, I hear what you're saying, but I certainly don't read that in the agreement, but let me turn since I only have a few minutes left. Senator Grassley raised the issue of the mifepristone lawsuit, and just to be clear, you understand the difference between the morning after pill and mifepristone, don't you?

Mr. Blanche. Yes.

Senator Cornyn. And so, mifepristone is a chemical

abortion that can be administered up to 10 weeks of gestation. The length of gestation should be, according to the medical literature, confirmed by ultrasound or clinical assessment by a healthcare provider, and it's generally safe and effective, according to the literature, when used under medical guidance. But the problem is that President Biden's Administration changed the Trump policy and allowed the administration of this chemical abortion drug without any medical guidance whatsoever.

And as you know, I've written a letter. Senator Tillis and I sent a letter yesterday. I understand you can't necessarily talk too much about your litigation strategy in the case of Louisiana against FDA, but I would appreciate it if you would respond to this letter for the record about the intentions of the Administration. If President Trump is the most pro-life President, this ought to be a pretty easy call because women are hurt as a result of side effects, heavy bleeding, prolonged potentially infection or sepsis, incomplete abortion, other complications when this is being sold through the mail or through online prescription. Will you do that for me?

Mr. Blanche. Yes, Senator, I will.

[Poster]

Senator Cornyn. Finally, let me just, in the 50 seconds I have, go back to this release. This purports to

release lawfare and/or weaponization. Those aren't legal terms of art, are they?

Mr. Blanche. I think they are just legal terms of art. There's not any --

Senator Cornyn. Have they been defined in any case or any statute?

Mr. Blanche. Not that I'm aware of, no.

Senator Cornyn. So, they're not a legal term of art?

Mr. Blanche. Well, I think that the terms have been used by the legal community and by people within government, but, no, I'm not sure that they're in Black's Law Dictionary, for example.

Senator Cornyn. So, we don't know what that covers.

Mr. Blanche. Well, I think it depends on the circumstances of the facts presented as to whether it covers. As to what it covers, sorry.

Senator Cornyn. Thank you. My time's up.

Senator Grassley. Senator Klobuchar.

Senator Klobuchar. Thank you very much, Mr. Chair. Mr. Blanche, after both the assassination of Melissa Hortman, our former Speaker of the House, and after the Enunciation School shooting in which 20 people were gunned down through stained glass windows, Federal law enforcement, as you and I discussed in my office a few weeks ago, worked cooperatively with State and local. And